Filed 6/20/16  Martinez v. Asplundh Tree Expert Co. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ADAM MARTINEZ,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>ASPLUNDH TREE EXPERT COMPANY et al.,<br><br>    Defendants and Appellants. | G052165<br><br>(Super. Ct. No. 30-2010-00406671)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Mary Fingal Schulte, Judge.  Reversed.  Motion for appellate sanctions.  Denied.

Ivie, McNeill & Wyatt, Byron M. Purcell and Sherrye E. Scarlett for Defendants and Appellants.

Hall & Bailey and Donald R. Hall for Plaintiff and Respondent.

\*          \*          \*

Asplundh Tree Expert Company and its attorneys (collectively, Asplundh) appeal the trial court's order awarding Adam Martinez $6,400 in sanctions for having to respond to a duplicative summary judgment motion. According to Martinez, Asplundh in the second motion simply reargued identical issues that already had been decided and for which there were no new facts, circumstances, or intervening change in law concerning those issues. (Code Civ. Proc., §§ 128.7, 437c, subd. (f)(2), 1008; all further statutory references are to this code.) But the second motion included a request for summary adjudication of new allegations added by Martinez's first amended complaint (FAC). The trial court concluded sanctions were warranted because the FAC contained no "new theories of liability" aimed at Asplundh, and therefore the second motion was entirely unfounded and improper. While Martinez's failure to name Asplundh in the FAC made it difficult to discern whether the FAC's new allegations applied only to a codefendant and not to Asplundh, we determined in a prior writ proceeding that Asplundh remained a party to the litigation as a "Doe" defendant.

As we explain, because Martinez in his FAC asserted an agency liability allegation against all Doe defendants on all causes of action, Asplundh's decision to file a second summary adjudication motion fell within the bounds of reasonably zealous advocacy. This is particularly true where Martinez on more than one occasion refused to stipulate that the FAC's new allegations concerning powerline warning signs or willful misconduct did not apply to Asplundh. Consequently, the record does not support the trial court's conclusion the second motion warranted sanctions for unreasonably duplicating the first. We therefore reverse the sanctions award and similarly deny Martinez's motion for sanctions for having to respond to a frivolous appeal.

I

FACTUAL AND PROCEDURAL BACKGROUND

Martinez sued Southern California Edison (SCE or Edison) and multiple "Doe" defendants in September 2010, alleging their negligence contributed to his injuries

when the metal tent pole he was using on a ladder to measure trees contacted Edison's power lines. He later named Edison's vegetation-maintenance contractor, Asplundh, as Doe 1. Asplundh answered, denied liability, and filed a summary judgment and summary adjudication motion. But a few weeks before the hearing, Martinez sought leave to amend the complaint.

His proposed FAC added a single new substantive paragraph alleging Edison had known for years that a required "High Voltage" sign was missing or broken when the accident occurred, and based on this willful misconduct, Martinez added a claim for punitive damages. Plaintiff's proposed FAC inexplicably reverted to Doe designations for the other defendants. Although Doe 1 remained in the caption and body of the proposed amended complaint, the pleading did not name Asplundh specifically in the caption, body, prayer, or in any proposed amended provisions.

At the hearing on Martinez's motion for leave to amend, Asplundh sought to clarify whether it was "in or out of the case," but the court deferred discussion on that issue to the summary judgment hearing and granted Martinez leave to amend. A week later, the trial court heard Asplundh' s summary judgment or summary adjudication motion. Asplundh asserted it owed no general duty of care to keep the public or Martinez safe from power lines or, if it had any duty under its contract with Edison to maintain a minimum of 18 inches in tree and branch clearance under Edison's power lines, Martinez's injuries were caused solely by his own negligence in his "voluntary act of placing a 19-foot-6[-]inch metal-tent pole in contact with a power line."

The trial court denied Asplundh's motion, finding "there is a plethora of triable material issues of fact any one of which defeats this Motion for Summary Judgment," including "the extent of Asplundh's responsibility."

Nevertheless, Asplundh refused to participate in further discovery, claiming that because Martinez failed to name it in the FAC, it had been dismissed. The trial court was not pleased when Martinez reported Asplundh's conduct, observing at an ensuing

3

hearing, "I think you're playing games. I think you're trying to drag things out, and you're wasting my time with such a silly opposition . . . ." When counsel for Asplundh objected, "But your Honor, the first amended complaint doesn't name Asplundh as a defendant," the court responded, "They're named as a Doe in the original complaint, they're still in the case as a Doe party." Counsel persisted, "Your Honor, there's punitive damages. It's not clear to Asplundh if those allegations apply to Asplundh or not. We're simply asking plaintiff to clarify the pleadings." When the court asked Martinez's attorney, "Are you seeking punitive against Asplundh," he answered, "No, your Honor," and the court informed Asplundh that the issue was resolved, noting, "There, it's on the record." The court ordered Asplundh to answer the amended complaint within three days, but Asplundh instead filed a demurrer.

At the hearing on the demurrer, Asplundh explained it sought clarification on the three bases for liability in the case: ensuring clearance for Edison's powerlines, the absence of high voltage warning signs, and punitive damages for willful misconduct in failing to post the signs. When Edison's attorney agreed "'there is no factual basis or any basis or claim that the signage or the punitive damages are against Asplundh,'" Asplundh requested confirmation from Martinez. As Asplundh explained, "We just want to have it clarified so we don't have to go into motions and argue this." But Martinez refused to agree or stipulate on those issues.

The trial court, however, deemed the demurrer "moot" since Asplundh had not filed an answer as ordered, and invited Martinez to seek Asplundh's default on the first amended complaint for lack of an answer. Martinez did so, and after the trial court entered the default, Asplundh filed a petition for a writ of mandate to overturn it.

An initial writ opinion filed by a panel of this court in October 2013 overturned the default. Because Asplundh was not named in the FAC, the panel concluded Asplundh was not a party and its default could not be taken on the FAC, and therefore remanded with directions for the trial court to grant Martinez leave to amend to

4

name Asplundh.   The panel, however, granted rehearing on Martinez's motion to consider whether the "Doe 1" designation in the FAC was sufficient to retain Asplundh as a defendant, and concluded it was.   The February 2014 writ opinion resolved that Asplundh "remained a party to the first amended complaint."  (*Asplundh Tree Expert Company v. Superior Court* (Feb. 5, 2014, G047396) [nonpub. opn.], p. 5.)  The opinion explained that although Asplundh did not file an answer as the trial court had ordered, its demurrer constituted a responsive pleading, and therefore remanded for the trial court to consider the demurrer, which the trial court overruled in July 2014.

In December 2014, Asplundh noticed a second motion for summary judgment or summary adjudication, set for a hearing on April 16, 2015, four days before the trial date.

In its notice of motion, Asplundh justified its second motion for summary judgment or summary adjudication as follows:  "This motion for summary judgement [*sic*] is made on the grounds that there is no cause of action pled against Asplundh. Further, that there is no triable issue of material fact if Plaintiff's causes of action against Southern California Edison ('SCE') are deemed pled against Asplundh. [¶]  In the alternative, if for any reason summary judgment is not granted, Asplundh is entitled to summary adjudication on the following issues:  [¶]  1.  Whether Asplundh was negligent as it pertains to the design, installation, operation and/or maintenance of the power lines owned by Southern California Edison.  [¶]  2.  Whether Asplundh was negligent as it pertains to Public Utilities Commission General Order 95 Rule 56.1A," which required the posting of high voltage warning signs and formed the basis of Martinez's punitive damages allegation based on willful misconduct.

Martinez responded with a motion for monetary sanctions on the grounds that there were no new facts, circumstances or change in the law justifying relitigation of issues already resolved.  (§§ 128.7; 437c, subd. (f)(2); 1008, subd. (d).)

5

Asplundh justified its second motion for summary judgment or summary adjudication because it was "premised on a new complaint." But Martinez asserted in his opposition that Asplundh "misrepresents the record," noting: Plaintiff's complaint . . . and First Amended Complaint . . . are identical with respect to paragraphs 1-9. The only difference is that the First Amended Complaint added paragraph 10 which applies only to SCE [alleging violation of the Public Utilities Commission General Order 95 requirement to post High Voltage signs]." Martinez further explained: "The prayers of the Complaint and First Amended Complaint are also identical with the exception of the First Amended Complaint requesting 'punitive damages against Southern California Edison. . . . [¶] Therefore, Asplundh's argument that its second motion for summary judgment 'is premised on a new complaint which sets for[th] *new* allegations, *new* facts, a *new* cause of action, seeks [] new and additional damages, specifically punitive damages,' is specious. [Original italics.] [¶] Further, if the original and First Amended Complaint presented new issues and facts, then why is Asplundh's supporting evidence to the second motion the same as the supporting evidence to the first motion? The answer, of course, is that the evidence is the same because the issues and facts in the First Amended Complaint are the same."

The trial court granted Martinez's sanctions motion, explaining its rationale in a minute order, as follows: "Plaintiff's motion for sanctions under CCP section128.7 is granted. There is no dispute that Asplundh filed a prior MSJ, which was heard by Judge Rodriguez on 4-19-2012. Asplundh filed a second MSJ on 12-24-2014. Asplundh is suggesting that its currently filed MSJ is proper *because the MSJ that the Court heard in 2012 was as to the original complaint, and the FAC contains new theories of liability. The Court disagrees.* [¶] The minute order of 4-19-2012 specifically mentioned that to the extent the MSJ was directed to the original complaint, the MSJ may be moot by virtue of the FAC being filed. However, the fact that the parties, specifically Asplundh, did not object to the Court proceeding with ruling on the merits of the MSJ means there was

either some sort of tacit agreement that there was no new material in the FAC as to Asplundh (or the arguments on the MSJ would be the same irrespective of the operative pleading), or the MSJ was directed to the FAC. In either situation, however the Court finds that counsel for Asplundh has improperly filed the second MSJ, in violation of CCP §§ 128.7, 437c (f)(2) and 1008(d)." (Italics added.)

Martinez had sought $12,000 in sanctions at his attorney's rate of $750 an hour for the 16 hours counsel spent responding to the summary judgment motion and to file the sanctions motion. In its minute order, the court found "16 hours at the rate of $400 per hour to be reasonable compensation," and "order[ed] sanctions against Defendant and its counsels of record, jointly and severally, in the amount of $6400 to be paid within 30 days."

In light of its conclusion the second summary judgment motion was merely duplicative and warranted sanctions, the trial court vacated the hearing on the motion. Meanwhile, Martinez had settled with Edison and when the matter proceeded to a jury trial against Asplundh, it obtained a defense verdict exonerating it from liability. This appeal concerns only the trial court's sanctions order.

II

DISCUSSION

Asplundh contends the trial court erred in awarding sanctions under section 128.7 because "there is no evidence . . . [it] filed its motion for an improper purpose" because "the issues of punitive damages and violation of General Order 95 Rule 56.1A had not been adjudicated." For the same reason, Asplundh contends its second summary adjudication motion was "reasonable and proper pursuant to . . . Section 437c(f)(2) and not in violation of . . . Section 1008."

Section 128.7, subdivision (b), provides in pertinent part: "By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, petition, written notice of motion, or other similar paper, an attorney or unrepresented party is

7

certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met: [¶] (1) It is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. [¶] (2) *The claims, defenses, and other legal contentions therein are warranted by existing law* or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." (Italics added.)

Section 437c, subdivision (f)(2), contemplates a second or further motion for summary judgment or summary adjudication, but specifies: "[A] party may not move for summary judgment *based on issues asserted in a prior motion* for summary adjudication and denied by the court unless that party establishes, to the satisfaction of the court, newly discovered facts or circumstances or a change of law supporting the issues reasserted in the summary judgment motion." (Italics added.)

Section 1008 provides for reconsideration of prior court orders. Subdivision (b) specifies that "[a] party who originally made an application for an order which was refused in whole or part, or granted conditionally or on terms, may make a subsequent application for the same order upon new or different facts, circumstances, or law, in which case it shall be shown by affidavit what application was made before, when and to what judge, what order or decisions were made, *and what new or different facts, circumstances, or law are claimed to be shown*." (Italics added.) Where these requirements are violated, subdivision (d) provides for sanctions "as allowed by Section 128.7," which we set out below. (§ 1008, subd. (d).) As we elsewhere have explained, "The name of a motion is not controlling, and, regardless of the name, a motion asking the trial court to decide the same matter previously ruled on is a motion for reconsideration under . . . section 1008." (*Powell v. County of Orange* (2011) 197 Cal.App.4th 1573, 1577.)

8

Section 128.7 authorizes the trial court to "impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." (§ 128.7, subd. (c).) The sanction "may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation." (*Id.*, subd. (d).) But "[t]he primary purpose of the statute is deterrence of filing abuses, not to provide compensation for those impacted." (*Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 920-921, citing *Business Guides v. Chromatic Comm. Enterprises* (1991) 498 U.S. 533, 553 [similar federal rule aims "not to reward parties who are victimized by litigation" but "to deter baseless filings and curb abuses"].)

We review a section 128.7 sanctions award under the abuse of discretion standard. (*Patel v. Crown Diamonds, Inc.* (2016) 247 Cal.App.4th 29, 37.) While that standard is deferential, "the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious."[1] (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.)

Here, the standard boils down to whether substantial evidence supported Martinez's contention, which the court adopted, that Martinez's FAC so obviously contained *no* "new theories of [Asplundh's] liability" that Asplundh's second motion for summary judgment or summary adjudication was "improper" under section 128.7. An objectively unreasonable filing may qualify as improper, sanctionable conduct, and subjective bad faith is not required. (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167

---

[1] *Haraguchi* reviewed a motion to recuse a prosecutor, but its clear explication of the abuse of discretion standard similarly applies to section 128.7.

9

(*Guillemin*).) But "our adversary system requires that attorneys and litigants be provided substantial breathing room to develop and assert factual and legal arguments"; accordingly, "sanctions should not be routinely or easily awarded even for a claim that is arguably frivolous." (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 448.)

Substantial evidence does not support Martinez's contention in his sanctions motion that "Asplundh's second motion . . . makes the same arguments as Asplundh's first motion." True, Asplundh's notice of motion for its second motion carelessly reiterated boilerplate contentions concerning issues that already had been resolved in the case. For instance, the notice suggested "summary judgement" (*sic*) was warranted because "there is no cause of action pled against Asplundh," but our writ opinion resolved that Asplundh remained a defendant as "Doe 1" in the case, and the trial court similarly rejected Asplundh's demurrer on that ground and earlier had rejected Asplundh's initial summary judgment motion because triable issues of fact existed on whether Asplundh, *as Doe 1*, owed to plaintiff or breached a duty of care in ensuring Edison's powerlines remained clear of vegetation. Consequently, Asplundh should not in its second motion have moved for summary *judgment*, nor recited in its notice of motion that summary judgment or adjudication was warranted because "there is no triable issue of material fact if Plaintiff's causes of action against [SCE] are deemed pled against Asplundh." To the contrary, the trial court had concluded in rejecting Asplundh's initial summary judgment motion that triable issues remained on the "the extent of Asplundh's responsibility," if any, for Martinez's injuries based its line-clearing duties on SCE's behalf.

But Martinez did not delineate or otherwise move for — and the trial court did not award — sanctions based on allegations or a conclusion that *some* portion of Asplundh's second motion was duplicative or restated earlier issues. Rather, Martinez claimed sanctions were necessary because Asplundh's second motion for summary judgment or adjudication included *nothing* new, but instead "ma[de] the same arguments

10

as Asplundh's first motion," rendering it frivolous and improper.  The record does not support Martinez's contention or the trial court's sanctions ruling adopting it.

In some respects, the actual text of Asplundh's second motion for summary judgment or adjudication came dangerously close, like its notice of motion, to simply reiterating earlier claims, as if Asplundh thoughtlessly cut and pasted material from its earlier filings, including its first summary judgment motion.  But in each instance, Asplundh included language making reasonably clear, on close examination, that its second motion sought summary adjudication of the FAC's new warning sign allegation, on which the FAC premised a punitive damages claim based on a new allegation of willful misconduct, which had not been resolved in the trial court's earlier summary judgment ruling concerning the original complaint.

For example, Asplundh sought summary adjudication in its second motion because, as "A Tree Trimming Company, [it] Had No Duty to Maintain or Repair SCE's Power Lines *or Warning Signs*."  (Italics added.)  Similarly, Asplundh based its new motion on its claim it "never had any responsibility to maintain the power lines *or the high voltage signs* under its contract with Edison."  (Italics added.)  The motion noted, "Nor does [Asplundh's contract with Edison] require Asplundh to keep and maintain SCE in compliance with General Order 95, Rule 56.1A," which imposes and governs signage requirements for high voltage power lines.  The motion continued:  "Moreover, as Asplundh has never owned or controlled SCE's power lines *or high voltage warning signs*, no basis exist[s] to find Asplundh responsible for maintaining or repairing such.  For the reasons above, Asplundh did not have a duty to Plaintiff to maintain or repair the power lines *or high voltage warning signs*."  (Italics added.)

Additionally, Asplundh's second motion added a new section of three short but entirely new paragraphs absent from its first summary judgment motion.  The new section was entitled, "Plaintiff Fails to Establish the Essential Elements of Willful Misconduct Against Asplundh."  The new section was aimed at Martinez's new willful

11

misconduct claim in his FAC, on which he based his punitive damages claim, neither of which Asplundh addressed in its first summary judgment motion because Martinez's original complaint alleged neither. In light of the foregoing, the record does not support Martinez's claim in his sanctions motion, which the trial court adopted in imposing sanctions, that Asplundh's second summary judgment or adjudication motion simply "ma[de] the same arguments as Asplundh's first motion."

The gravamen of the trial court's ruling was its adoption of Martinez's claim in moving for sanctions that the FAC did not assert "new theories of liability" *applicable to Asplundh*. Martinez claimed in moving for sanctions that the only reasonable interpretation of the FAC was that its new allegations concerning willful misconduct and punitive damages for breaching a duty to post high voltage warning signs *applied only to SCE*. True, the new allegations in the FAC named only SCE, but that was also true of all the allegations in the original complaint, including the line maintenance theory of liability on which the trial court rejected Asplundh's first motion for summary judgment. Indeed, the FAC restated the original complaint's Doe allegation that "*each* other defendant sued herein, both named *and Doe defendants*, *is liable for the conduct herein alleged*," including on an agency or alter ego basis. (Italics added.) Accordingly, Asplundh reasonably could fear that, just as in the original complaint, all the allegations in the FAC applied not simply to the only named defendant, SCE, but also to any and all Doe defendants, including Asplundh, and on that basis move for summary adjudication of the FAC's new allegations.

Consequently, Asplundh's second motion for summary adjudication did not furnish a basis for sanctions because, contrary to Martinez's claim, it was not an "objectively unreasonable" filing. (*Guillemin*, 104 Cal.App.4th at p. 167.) This is particularly true where, as noted, Martinez refused to stipulate at the demurrer hearing that the new willful misconduct and punitive damages allegations in the FAC did not

12

apply to Asplundh.[2]  While it was Martinez's prerogative not to enter a stipulation regarding the allegations, it was similarly Asplundh's prerogative to seek summary adjudication of the new issues for lack of any disputed issues of material fact and because they previously had not been resolved.  After all, that is the basis of any motion for summary judgment or summary adjudication.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [summary judgment law "provide[s] courts with a mechanism . . . to determine whether . . . trial is in fact necessary to resolve their dispute"].)

On appeal, Martinez has filed a motion seeking sanctions for having to respond to a frivolous appeal (Cal. Rules of Court, rule 8.276(a)), but obviously where the appeal is successful, there is no basis for sanctions.

III

DISPOSITION

The trial court's sanctions order is reversed and we deny Martinez's motion for sanctions on appeal.  In the interest of justice and finality, the parties shall bear their own costs on appeal.

ARONSON, ACTING P. J.

WE CONCUR:

FYBEL, J.

IKOLA, J.

---

[2]    At oral argument, Asplundh noted Martinez similarly refused to stipulate at an in limine hearing that the new allegations did not apply to Asplundh, requiring Asplundh to face the allegations at trial.