Filed 12/4/20  Sorensen v. Lam CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KERRY L. SORENSEN, | |
| Plaintiff and Appellant, | G058065 |
| v. | (Super. Ct. No. 30-2016-00842327) |
| KENNETH LAM et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Layne H. Melzer, Judge.  Affirmed.

Law Office of Kerry L. Sorensen and Kerry L. Sorensen for Plaintiff and Appellant.

Hartsuyker, Stratman & Williams-Abrego, Brian Rizzi; Veatch Carlson and Serena L. Nervez for Defendants and Respondents.

\*         \*         \*

This appeal is the latest development in a multi-year dispute between a residential tenant and his landlords concerning the landlords' failure to repair the premises and the tenant's withholding of rent. In his first lawsuit against his landlords, the tenant asserted causes of action for breach of the warranty of habitability, fraud, and other claims. Meanwhile, the landlords initiated unlawful detainer proceedings against the tenant and his wife.

While the tenant's first lawsuit was pending, the trial court ruled in the unlawful detainer action that although the landlords had breached the warranty of habitability, the landlords nevertheless were entitled to reduced rent and possession of the premises. The landlords then caused the tenant and his wife to be served with a notice to vacate.

At about the same time, the tenant's wife became gravely ill with cancer. He therefore stipulated to dismiss his pending lawsuit against the landlord with prejudice in exchange for an extended move-out date. Soon after that, the tenant's wife passed away, and he vacated the premises. A few months later, he filed a motion to set aside the dismissal of his first lawsuit against the landlords, but that motion was denied.

Three years later, the tenant sued the landlords again, asserting claims for breach of the warranty of habitability and quiet enjoyment, breach of contract based on their failure to make repairs, rescission of the stipulation to dismiss his first lawsuit, fraud, and other claims. The trial court in that action ruled in favor of the landlords and against the tenant on all claims—first in a summary adjudication ruling, then in a motion for judgment, and finally, at the conclusion of trial in its statement of decision. For the reasons below, we affirm.

2

## FACTS

Kerry Sorensen and his wife leased a house in Mission Viejo from Pui Lan Luk Lam (Pui[1]) in 2007. The lease was periodically renewed; it eventually converted to a month-to-month rental agreement.

Sorensen's relationship with his landlord gradually deteriorated due to the also deteriorating condition of the house, and in June 2012, he advised his landlord he would be withholding rent until certain repairs were made.

The repairs evidently were not made, so Sorensen filed a complaint (the First Lawsuit) against Pui and her sons, Kenneth and Raymond Lam, who reportedly helped manage the property. The complaint also named as a defendant Pui's limited liability company, Wynket Regional, LLC (Wynket), to which Pui had allegedly transferred her interest in the property back in 2009. The complaint asserted claims for fraud and deceit based on their failure to make repairs, intentional infliction of emotional distress, nuisance, and declaratory relief concerning the property's reasonable rental value.

The Sorensens were soon served with a three-day notice to pay rent or quit, as well as a 60-day notice to quit based on termination of the rental agreement. Pui and Kenneth then initiated an unlawful detainer action (the UDA) against the Sorensens, who asserted breach of the warranty of habitability as an affirmative defense. Wynket was later substituted in as the plaintiff in the UDA, and Pui and Kenneth were removed as plaintiffs.

While the UDA was pending, Sorensen amended his complaint in the First Lawsuit to assert additional claims against Wynket, Pui, Kenneth, and Raymond for breach of the warranty of habitability, retaliatory eviction, and statutory penalties.

---

[1] Because several defendants share the same last name of Lam, we refer to them by their first names to avoid confusion. We mean no disrespect.

3

In December 2012, on the eve of trial in the UDA, Sorensen's wife was diagnosed with inoperable lung cancer and was hospitalized on an emergency basis. Trial in the UDA went forward nevertheless.

The trial court in the UDA found the Sorensens had "put significant labor into improving the premises with [Wynket] paying only for materials," and Wynket had done "a poor job of maintaining the home, which would be in even worse shape than it is but for [the Sorensens'] efforts." Citing evidence of water intrusion, lack of heat and air conditioning, and sewer backups, the court found the Sorensens had successfully raised the warranty of habitability as an affirmative defense, and noted some of that damage still needed to be repaired. However, the court rejected the Sorensens' argument that the fair rental value of the home was zero, found the habitability issues justified only a reduction in rent, not a total failure to pay any rent, and concluded the property's reasonable monthly rental value from June 2012 onward was $2,000. The court also found Wynket's 60-day notice to terminate was valid and not retaliatory, noting the Sorensens had failed to pay any rent.

Accordingly, the trial court in the UDA found Wynket was entitled to $9,399 ($4,000 for past due rent, plus daily damages of $66.66 per day), forfeiture of the rental agreement, possession of the premises, and a writ of possession to issue. It further ordered monthly rent would be limited to $2,000 per month until the defects were repaired. It then entered a judgment for Wynket and against the Sorensens. The judgment noted Wynket had "breached the agreement to provide habitable premises to" the Sorensens, but Wynket was "entitled to possession of the premises," plus $9,399.

Later that month, Wynket obtained a writ of possession and had the sheriff serve Sorensen and his wife with a notice to vacate. Sorensen and Wynket's attorney agreed the Sorensens' "lock-out" date would be February 18, 2013.

Unfortunately, Sorensen's wife's medical condition worsened, so on February 18, Sorensen and Wynket agreed to extend the Sorensens' move-out date to

4

April 2 on the condition that (1) the Sorensens would pay monthly rent through April 2 up front, plus an additional $1,500, (2) Sorensen would dismiss his complaint in the First Lawsuit with prejudice, and (3) the Sorensens would not file any more lawsuits against Wynket, Pui, or other members of the Lam family (the February 2013 Stipulation). In accordance with the stipulation, Sorensen filed a request for dismissal of the First Lawsuit the following week.

Sorensen's wife passed away in March, and he vacated the property on April 2. According to Sorensen, he was unable to move out all his personal property due to time and financial constraints. That personal property was never returned to him.

Two months later, Sorensen filed a motion to set aside the dismissal of the First Lawsuit on the basis of extrinsic fraud, duress, and mistake. He asserted that Wynket, Pui, Kenneth, and Raymond had "violated an agreement that they would act reasonably in requiring Plaintiff and his wife to move out, violated an agreement not to seek a writ of possession without first notifying Plaintiff, and . . . forced Plaintiff to agree to dismiss this action in exchange for an agreement not to have the Sheriff forcibly remove Plaintiff's wife from her death bed."

The trial court denied the motion, finding no evidence Sorensen had entered into the February 2013 Stipulation based on coercive conduct by Wynket or the Lams, and finding no grounds to vacate the dismissal. The court noted Sorensen could have sought judicial intervention rather than dismissing the lawsuit, but he provided no explanation for why he did not do so. Sorensen did not appeal that ruling.

Three years later, Sorensen allegedly discovered that in 2011, Wynket had executed a deed (which was not recorded until 2016) transferring its interest in the premises to Raymond, who then transferred the premises by deed in 2016 to the Peridot Trust. According to Sorensen, this meant Wynket had not been a proper plaintiff in the UDA.

5

Sorensen filed a new lawsuit (the Second Lawsuit) against Pui (who had died in 2013), Pui's Estate, Kenneth, Raymond, Wynket, and Shelly Lam, individually and as trustee of the Peridot Trust. In his operative fourth amended complaint, he asserted claims against Pui, her Estate, Kenneth, Raymond, and Wynket for breach of the warranty of habitability and quiet enjoyment, rescission of the February 2013 Stipulation, conversion of personal property, breach of contract (failure to make repairs), failure to return his security deposit, and fraud and deceit (based on alleged misrepresentations during the UDA about who owned the property). He asserted claims against Raymond and Shelly to set aside the fraudulent conveyance of the premises and for conspiracy.

Midway through the litigation of the Second Lawsuit, Sorensen dismissed Pui (who had died in 2013) and Wynket (which had been dissolved). Additionally, the clerk entered defaults against Raymond and Pui's Estate. The remaining two defendants, Kenneth and Shelly, both answered the complaint.

Kenneth and Shelly filed a motion for summary judgment, or in the alternative, summary adjudication. Although the trial court denied summary judgment, it granted summary adjudication in part, finding in Kenneth's favor on Sorensen's claims for breach of warranty, rescission of the February 2013 Stipulation, breach of contract, and conversion. The court reasoned the first three claims were "simply an effort by [Sorensen] to relitigate the First Lawsuit and the [UDA] and to undo the January 3, 2013 judgment [in the UDA], the February 18, 2013 stipulation, and the February 21, 2013 dismissal of the First Lawsuit. Each of these causes of action was litigated in the First Lawsuit and/or the [UDA] or could have been litigated in either or both of those lawsuits." The court found the conversion claim failed for lack of evidence because Sorensen did not tell defendants he wanted his personal property back, and because defendants never refused to return the property to him.

On the eve of trial, Pui's Estate and Raymond moved to set aside the defaults entered against them and for permission to file answers, seeking relief based on

attorney mistake, inadvertence, surprise or neglect. The trial court advanced the hearing date on the motion to the next day, denied Sorensen's oral request to continue trial, and granted the motion to set aside the defaults.

The case moved forward as a bench trial. After Sorensen rested, defendants moved for judgment under Code of Civil Procedure section 631.8. The trial court granted the motion in part, finding in their favor on the fraud claim; in favor of Pui's Estate and Raymond on the claims for breach of warranty, rescission, and breach of contract; finding in Raymond's favor on the claims for conversion and return of the security deposit; and finding in favor of Raymond and Shelly on the claims for fraudulent conveyance and conspiracy. Thus, by the time of closing arguments, the only remaining causes of action were against Pui's Estate for conversion, and against Pui's Estate and Kenneth for return of the security deposit.

Following trial, the trial court issued a detailed statement of decision finding for defendants on all causes of action. It then entered judgment for defendants. Sorensen filed a notice of appeal.

## DISCUSSION

1.      *Sorensen's Request to Continue Trial*

Sorensen first challenges the trial court's refusal to continue the trial date when it set aside the defaults against Pui's Estate and Raymond. As noted above, on the eve of trial in the Second Lawsuit, Pui's Estate and Raymond filed a motion to set aside the defaults entered against them and allow the filing of answers. The next court day, the parties answered ready for trial, and counsel informed the court of the pending motion to set aside the defaults. Sorensen orally asked the court to postpone trial until the motion was heard, but the court denied his request, noting "this is an older case and needs to be brought to conclusion." The court then advanced the hearing on the motion to set aside the defaults to the following day, and it gave Sorensen until the hearing to file an

7

opposition. Sorensen's opposition addressed why he believed relief from default was inappropriate, but it did not argue for a continuance of the trial date. After considering the parties' briefs and hearing oral argument, the court granted the motion to set aside the defaults, and the case proceeded to trial.

Sorensen concedes "the granting of the motion [to set aside the defaults] was within the sound discretion of the Court," but he insists "the refusal to grant a [trial] continuance was an abuse of discretion because it resulted in a denial of procedural due process to Plaintiff and extremely prejudiced his case." According to Sorensen, because of the trial court's "unconditional" granting of the motion to set aside defaults (i.e., because the court did not continue the trial date), he was denied proper notice of the trial as to Pui's Estate and Raymond, he was unable to conduct discovery as to either defendant, he was unable to compel either defendant to appear or produce documents at trial, and some of his claims suffered as a result for lack of evidence.[2]

We review the trial court's decision to grant or deny a continuance for abuse of discretion. (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 984.) "The burden rests on the complaining party to demonstrate from the record that such an abuse has occurred." (*Id*. at p. 985.) "[A]ny error in failing to grant a request for a continuance— whether mandatory or discretionary—is reversible only if it is tantamount to the denial of a fair hearing. [Citations.] There is no presumption of prejudice. [Citations.] Instead, the burden to demonstrate prejudice is on the appellant." (*Freeman, supra,*

---

[2] Defendants contend we should not reach these arguments because Sorensen's notice of appeal did not mention the order granting the motion to set aside default or its refusal to continue the trial date. But an order "granting of [a] defendant's motion to set aside [a] default can be presented on appeal from the judgment." (*Veliscescu v. Pauna* (1991) 231 Cal.App.3d 1521, 1523, fn.1 [citing Code Civ. Proc., § 904.1, subd. (a)].) And a trial court's "failure to grant [a] requested continuance is reviewable on appeal from the judgment." (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527 (*Freeman*).) Sorensen's appeal from the "[j]udgment after court trial" therefore sufficiently encompassed these interlocutory orders.

192 Cal.App.4th at pp. 527-528.)  "The party seeking to challenge an order on appeal has the burden to provide an adequate record to assess error.  [Citation.]  Where the party fails to furnish an adequate record of the challenged proceedings, his claim on appeal must be resolved against him."  (*Rancho Santa Fe Assn. v. Dolan-King* (2004) 115Cal.App.4th 28, 46.)

Applying those standards here, we find no abuse of discretion in the trial court's refusal to continue trial.  To start, Sorensen's request was procedurally defective.  "A party seeking a continuance of the date set for trial, whether contested or uncontested or stipulated to by the parties, must make the request for a continuance by a noticed motion or an ex parte application under the rules in chapter 4 of this division, with supporting declarations."  (Cal. Rules of Court, rule 3.1332(b).)  Sorensen did neither.

Further, a trial court may not grant a continuance absent "an affirmative showing of good cause requiring the continuance."  (Cal. Rules of Court, rule 3.1332(c).)  Here, it is unclear from the record what grounds, if any, Sorensen cited to support his oral continuance request.  Our record does not include a reporter's transcript from the hearing during which he orally requested a continuance.  Although Sorensen now complains the lack of continuance prevented him from conducting discovery as to the Estate and Raymond and from compelling them to appear and produce documents at trial, there is nothing in the appellate record to confirm he ever raised these concerns with the court.  We have only the court's minute order, which states, "All counsel answer ready for trial.  [¶] . . . [¶] . . . Counsel inform the Court there is currently a motion to set aside default scheduled.  [¶]  Plaintiff requests postponement of trial until motion is heard.  Request is denied as this is an older case and needs to be brought to conclusion."  On this sparse record, we cannot say the court abused its discretion in denying his request to continue trial.

9

2. *The Trial Court's Res Judicata Rulings*

Sorensen next attacks the trial court's rulings that the doctrine of res judicata bars his claims for breach of warranty, breach of contract, and rescission of the February 2013 Stipulation. As noted above, the court granted summary adjudication for Kenneth on those claims, finding Sorensen was attempting "to relitigate the First Lawsuit and the [UDA]." And midway through trial, the court granted the Estate's and Raymond's motion for judgment on those claims, citing the doctrines of res judicata and collateral estoppel.

We review the trial court's order grant of summary adjudication[3] de novo. (*Sharufa v. Festival Fun Parks, LLC* (2020) 49 Cal.App.5th 493, 497.) Although we normally review a ruling on a motion for judgment for substantial evidence (*Higgins v. Higgins* (2017) 11 Cal.App.5th 648, 658), the trial court's ruling here was based on the application of res judicata, a question of law that we review de novo. (*Johnson v. GlaxoSmithKline, Inc.* (2008) 166 Cal.App.4th 1497, 1507.)

A. *Res Judicata Principles*

"The claim preclusion doctrine, formerly called res judicata, 'prohibits a second suit between the same parties on the same cause of action.' [Citation.] 'Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit.' [Citation.] 'Retraxit' describes the particular application of claim preclusion to a claim that has been dismissed with prejudice. [Citation.] A dismissal with prejudice is considered a judgment on the merits preventing subsequent litigation between the parties on the

---

[3] Defendants assert we may not review the summary adjudication ruling because it is not mentioned in Sorensen's notice of appeal. But an order granting summary adjudication is reviewable on appeal from the final judgment in the action. (*Wilson v. County of San Joaquin* (2019) 38 Cal.App.5th 1, 7.)

dismissed claim." (*Kim v. Reins International California, Inc*. (2020) 9 Cal.5th 73, 91 (*Kim*).)

The related doctrine of collateral estoppel, also known as issue preclusion, "prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action. [Citation.] Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN*).) The doctrine "applies[:] (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id.* at p. 825.)[4]

B. *The Breach of Warranty and Breach of Contract Claims*

Applying those principles here, we conclude the trial court correctly found for defendants on Sorensen's causes of action for breach of warranty and breach of contract.

To start, the doctrine of issue preclusion bars Sorensen's claims for breach of the warranty of habitability and for breach of contract (failure to make repairs) because the issues of whether Wynket breached the warranty of habitability and failed to make

---

[4] For purposes of collateral estoppel, privity ""refers 'to a mutual or successive relationship to the same rights of property, or to such an *identification in interest* of one person with another as to represent the same legal rights . . . and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is "sufficiently close" so as to justify application of the doctrine of collateral estoppel.'"" (*Roberson v. City of Rialto* (2014) 226 Cal.App.4th 1499, 1511.) "'Under the requirement of privity, only parties to the former judgment or their privies may take advantage of or be bound by it. [Citation.] A party in this connection is one who is 'directly interested in the subject matter, and *had a right to make a defense, or to control the proceeding, and to appeal from the judgment*.' [Citations.] A privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase.'" (*Patel v. Crown Diamonds, Inc.* (2016) 247 Cal.App.4th 29, 37-38.)

11

repairs were litigated and determined at trial in the UDA. Sorensen therefore cannot relitigate those same issues against Wynket's privies (i.e., Pui's Estate, Kenneth, and Raymond) in the Second Lawsuit. (See *DKN, supra,* 61 Cal.4th at pp. 824-825.)

The doctrine of claim preclusion also bars Sorensen's claim for breach of the warranty of habitability. Sorensen previously asserted that a cause of action for breach of the warranty of habitability against Pui, Kenneth, and Raymond in the First Lawsuit, and then dismissed that lawsuit with prejudice. Under the doctrine of retraxit, that dismissal with prejudice constitutes a judgment on the merits against Sorensen, preventing him from later relitigating that dismissed claim in the Second Lawsuit. (See *Kim, supra,* 9 Cal.5th at p. 91.)

Sorensen contends his claim for breach of the warranty of habitability is not barred because he *prevailed* on that issue in the UDA.[5] That argument misses the point. The doctrine of issue preclusion looks not at whether a party won on a given issue, but whether that issue was actually litigated and decided. The doctrine bars Sorensen from relitigating that same issue in the Second Lawsuit in an attempt to get a second bite at the apple. (See *Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133 Cal.App.4th 1319, 1327 [collateral estoppel prevents a party who has had one fair adversary hearing on an issue from again drawing it into controversy and subjecting other party to further expense in its reexamination].)

Sorensen also asserts his breach of warranty cause of action is not barred because, unlike in the First Lawsuit, his breach of warranty cause of action in the Second Lawsuit included a claim for breach of warranty of quiet enjoyment. According to Sorensen, that component of his breach of warranty claim in the Second Lawsuit is based

---

[5]     As noted above, the judgment in the UDA specified Wynket had "breached the agreement to provide habitable premises to" Sorensen, but nevertheless stated Wynket was "entitled to possession of the premises," plus $9,399.

12

on facts discovered *after* his dismissal of the First Lawsuit, when he learned Wynket allegedly did not own the premises in 2012 and thus was not a proper plaintiff in the UDA.

The trial court correctly rejected this argument. As the court explained in its statement of decision, Sorensen's breach of warranty cause of action "speaks in terms of his quiet enjoyment being disturbed by a breach of the covenant of habitability, which is how the court understood that claim based on the pleadings. This primary right was fully adjudicated in the habitability lawsuit—Lawsuit #1. At trial . . . Plaintiff asserted the 'true owners' of the Premises (not Wynket because according to Plaintiff it was not the actual owner during the [UDA]) sat idly by while 'an imposter,' (aka Wynket) evicted Plaintiff and hence disturbed Plaintiff's quiet enjoyment by bringing the [UDA]. Plaintiff never attempted to amend his pleading to set forth this theory and hence it was not properly before the Court. Nonetheless, even if this Court were to consider this new theory it remains that Plaintiff's right to possession was fully adjudicated in the [UDA]."[6] We agree with this analysis. For these reasons, we conclude the trial court correctly found for defendants on Sorensen's claims for breach of warranty and breach of contract.

C.    *The Rescission Claims*

Whether res judicata bars Sorensen's claims for rescission of the February 2013 Stipulation requires a bit more scrutiny. As noted above, in the February 2013 Stipulation, Sorensen and Wynket agreed to extend the Sorensens' move-out date to April 2 on the condition that (1) the Sorensens would pay monthly rent through April 2 up front, plus an additional $1,500; (2) Sorensen would dismiss his complaint in the First Lawsuit with prejudice; and (3) the Sorensens would not file any more lawsuits against

---

[6]    In any event, the trial court in the Second Lawsuit rejected Sorensen's assertion that Wynket did not actually own the premises in 2012, so even if Sorensen's breach of quiet enjoyment theory is not barred by claim or issue preclusion, it would still fail for lack of evidence.

13

Wynket, Pui, or other members of the Lam Family. In the Second Lawsuit, Sorensen asserted two causes of action to rescind the February 2013 Stipulation: one cause of action alleged the stipulation was obtained by duress and undue influence given his wife's medical condition, and the other alleged the stipulation was illegal because it contradicted the judgment in the UDA, which stated rent shall be only $2,000 per month until repairs are completed.

The rescission claim based on duress is barred by issue preclusion. The issue of whether Sorensen's dismissal of the First Lawsuit was procured by duress was litigated and decided in the First Lawsuit when the trial court in that case denied his motion to set aside the dismissal. As noted, the court found no evidence Sorensen had entered into the February 2013 Stipulation based on coercive conduct by Wynket or the Lams. That settled that issue. Sorensen cannot relitigate the same issue in the Second Lawsuit. (See *Wouldridge v. Burns* (1968) 265 Cal.App.2d 82, 84 [an "order denying plaintiff's motion to set aside [a] dismissal [with prejudice] is a bar to future attacks on the dismissal under the doctrine of res judicata"].)[7]

But Sorensen's rescission claim based on illegality, which alleged the February 2013 Stipulation was void because it contradicted the rent amount specified in the judgment in the UDA, is *not* barred by issue preclusion; that illegality theory was not raised or litigated in Sorensen's motion to set aside default. Even so, we conclude the trial court properly entered judgment for defendants on this cause of action.

---

[7] In an effort to downplay the impact of the denial of his motion to set as the dismissal in the First Lawsuit, Sorensen argues his rescission causes of action do not seek to set aside the dismissal, but rather to rescind the February 2013 Stipulation. This is a meaningless distinction, considering the February 2013 Stipulation is what prompted Sorensen to dismiss the First Lawsuit. Indeed, Sorensen's rescission cause of action sought to rescind the stipulation so he could "pursue the damages set forth in his Complaint for Damages previously dismissed pursuant to the" Stipulation (i.e., his complaint in the First Lawsuit).

14

Notwithstanding the judgment in the UDA, Sorensen was free to negotiate a different rental amount in consideration for being allowed to stay in the premises longer. The provision in the February 2013 Stipulation changing the rent amount thus was not "illegal."

3. *Conversion*

Sorensen next contends the trial court erred in finding for Pui's Estate at trial on Sorensen's conversion cause of action. He asserts the court committed prejudicial error by applying California case law on conversion rather than Civil Code sections 1980 through 1991, which set forth optional procedures for disposing of a former tenant's personal property.

In its statement of decision, the trial court cited the common law definition of conversion, noting there "'can be no conversion where an owner expressly or impliedly assents to or ratified the taking, use or disposition of his property.'" The court explained its analysis: "Defendant Kenneth Lam testified that he corresponded with Plaintiff on 4/3/13 regarding the items of personal property that Plaintiff left at the residence when he vacated. Plaintiff was told these items needed to be claimed or were subject to disposal by way of a 'notice of right to reclaim abandoned property.' Exh 201. This notice was mailed to Plaintiff's last known address. Plaintiff failed to respond. Third party witness Michael O'Young, who was the landlord's attorney at the time, testified that he likewise spoke to Plaintiff on or about 4/3/13 regarding his remaining personal property. Plaintiff replied in effect that he did not care what was done with these items and that they could be discarded. Plaintiff did not in any meaningful way dispute this conversation nor its import. Mr. O'Young confirmed his communication in writing and mailed it to Plaintiff's business address, Exh 202."

The statement of decision then reached its conclusion: "Defendant's notice [that personal property remained on the premises] (Exh 201) substantially complied with *Civil Code* § 1983 and it advised that based on the limited value of the remaining

15

property, Plaintiff's personal property would be disposed of (rather than auctioned and sold). Pursuant to *Civil Code* § 1989 a landlord who provides such notice is permitted to dispose of such unclaimed property without monetary liability. See also CCP §1174(1). Moreover, Plaintiff was told he had the right to reclaim his personal property upon payment of the reasonable costs of storage within the statutorily permitted timeframe. CCP § 1170(h). Plaintiff failed to demonstrate that he could have (or even attempted to) reclaim[ed] his property in compliance with the law. He simply abandoned it and in effect consented to its disposition. [¶] *Indeed, Plaintiff specifically told the landlord the property could be discarded, and the landlord did as instructed.* Notwithstanding compliance with Civil Code §1981 (which is ostensibly 'optional'), the Court finds that Plaintiff consented to and/or waived any right to a return of or payment for the abandoned items of personal property based on his words and conduct in this context." (Boldface omitted.)

Sorensen asserts the trial court committed prejudicial error by relieving defendants of liability based on his alleged consent, and that a tenant cannot consent to his landlord's failure to meet the statutory "requirements" of Civil Code sections 1980 through 1991. We disagree. Those provisions merely provide an optional procedure for the disposition of personal property left behind on the premises after a tenancy has terminated and the premises have been vacated by the tenant. (Civ. Code, § 1981, subd. (a); see *id.*, subd. (e) ["If the requirements of this chapter are not satisfied, nothing in this chapter affects the rights and liabilities of the landlord, former tenant, or any other person"].) It would make no sense to force a landlord to comply with the various "optional" procedures outlined in the Civil Code (i.e., notice, waiting period, sale at public option, etc.), if the tenant has already consented unequivocally to the disposal of the property.

The remainder of Sorensen's arguments about his conversion cause of action are based on photographs introduced at trial, which are not part of our record, and

16

his unsupported statements concerning what evidence was presented at trial, which evidence is also not part of the appellate record. We therefore treat those arguments as forfeited. (Cal. Rules of Court, rule 8.204(a)(2)(C); *Citizens Opposing a Dangerous Environment v. County of Kern* (2014) 228 Cal.App.4th 360, 366, fn. 8.)

4.      *The Fraud Causes of Action*

Sorensen next asserts the trial court erred in ruling against him on his fraud cause of action. His argument relies largely on the following passage from the court's statement of decision: "Plaintiff's theory is that because Wynket allegedly transferred title to the Premises prior to final judgment in the [UDA] and Defendants (Pui Lam, Kenneth Lam and Raymond Lam) failed to disclose this transfer, these Defendants committed a fraud on the Court and Plaintiff. The predicate for this 'concealment' claim is the assumption that just prior to the inception of the [UDA] (but not discovered until 2016 when deeds were recorded) Wynket transferred title of the Premises to Pui Lam who in turn transferred to Raymond Lam. There was in fact evidence that these deeds were signed in July 2011, demonstrating an intent *at some point* to transfer from Wynket to Pui Lam, and then an intent *at some point* to transfer from Pui Lam to Raymond Lam. But there was no evidence of delivery."

According to Sorensen, this passage shows the trial court "erroneously believed it was Plaintiff's burden to produce evidence of delivery to PUI," when in fact, "the grantee's possession of the deed raises a rebuttable inference of delivery." Not so. As the plaintiff asserting a fraud claim, Sorensen had the burden to show Wynket had no ownership interest in the premises when it pursued the UDA, and Pui, Kenneth, and Raymond concealed that fact. (CACI No. 1900.)

True, "possession of a deed by the grantee named therein is prima facie evidence of its delivery and hence gives rise to an inference the instrument was duly delivered." (*20th Century Plumbing Co. v. Sfregola* (1981) 126 Cal.App.3d 851, 853.) But here, any inference of delivery was rebutted. As the trial court noted in its statement

17

of decision, the law "requires an act of delivery with the intent to transfer title at that point in time. The only evidence as to when there was an intent to effect transfer of title comes later—after the [UDA] was over—when Pui Lam indicated a desire to transfer the property to Raymond Lam as a birthday gift just before her death in or around 5/2013." The court evidently found any inference of delivery to have been rebutted. We have no basis to reweigh the evidence on appeal (nor could we, considering the record does not include a reporter's transcript).

The trial court also concluded Sorensen did not meet his burden of showing fraudulent intent. Sorensen does not address this defect in his fraud claim, so even if the court somehow erred in articulating the parties' respective burdens, judgment for defendants on the fraud claim was proper.

Sorensen also asserts the trial court committed prejudicial error in ruling against him on the fraudulent conveyance cause of action. The court found he "failed to carry his burden of proof as to an intent to defraud on behalf of Raymond." According to Sorensen, "the lack of evidence presented by Plaintiff was a direct result of the Court's denial of a continuance" after setting aside Pui's and Raymond's defaults. But as we explained above, the court did not abuse its discretion in declining Sorensen's continuance request. We therefore need not consider this argument further.

     5.    *The Costs Award*

The introduction of Sorensen's opening brief asserts that he also appeals the costs award. He failed to present any argument on that point, however, so we treat the issue as forfeited. (*Dinslage v. City & County of San Francisco* (2016) 5 Cal.App.5th 368, 377, fn. 3 ["'[a]lthough we address the issues raised in the headings, we do not consider all of the loose and disparate arguments that are not clearly set out in a heading and supported by reasoned legal argument'"]; *Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201 [appellant "forfeited the argument by

18

violating the rule that requires each point be presented in an appellate brief under a separate heading"].)

      6.      *Other Matters*

On a final note, we observe that Sorensen's appellate briefs largely fail to comply with the California Rules of Court. For example, portions of his briefs omit record references (Cal. Rules of Court, rule 8.204(a)(1)(C) [briefs must cite "to the volume and page number of the record where the matter appears"]); his briefs often cite to material outside the record (*id.*, rule 8.204(a)(2)(C) [facts in briefs must be "limited to matters in the record"]); and his briefs largely fail to provide any legal authorities in support of his arguments, citing only six cases in his 50-page opening brief (*id.*, rule 8.204(a)(1)(B) [briefs must include "citation of authority"].) Although Sorensen is appearing in propria persona in this action, he is an attorney. Indeed, at oral argument he described himself as a civil litigator with 45 years of experience. As is the case with all litigants before this court, whether they are represented or not, he must comply with all applicable rules in any future filings with this court.

19

**DISPOSITION**

The judgment is affirmed.  Defendants shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


GOETHALS, J.

WE CONCUR:


FYBEL, ACTING P. J.


THOMPSON, J.