Filed 3/30/16; pub. & mod. order 4/29/16 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RITA PATEL et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>CROWN DIAMONDS, INC., et al.,<br><br>    Defendants and Respondents. | G051439<br><br>(Super. Ct. No. 30-2014-00713449)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Linda Marks, Judge. Reversed.

John L. Dodd & Associates, John L. Dodd and Benjamin Ekenes; Law Offices of Timothy J. Donahue and Timothy J. Donahue for Plaintiffs and Appellants.

Michelman & Michelman, Ryan S. Michelman and Ronald E. Michelman; Benedon & Serlin, Douglas G. Benedon and Gerald M. Serlin for Defendants and Respondents Crown Diamonds, Inc. and Ana Alonso.

\*         \*         \*

Rita Patel appeals the trial court's entry of a judgment of dismissal after granting terminating sanctions striking her complaint under Code of Civil Procedure section 128.7 (all further statutory references are to this code). The court concluded Patel filed the complaint for an improper purpose without evidentiary or legal support because her claims were barred by res judicata based on her previous adversary action in federal court opposing Victor Ali's bankruptcy petition.[1] After Victor Ali obtained his bankruptcy discharge, however, Patel did not sue *him* in this action for fraud and related claims, but rather his business partners, including Ana Alonso, and their company Crown Diamonds, Inc. (Crown). Principles of res judicata and collateral estoppel do not apply to insulate defendants from answering for what Patel claims are *their* fraudulent activities. We therefore reverse the trial court's entry of judgment based on terminating sanctions against Patel and entry of monetary sanctions again Patel and her attorney.

I

FACTUAL AND PROCEDURAL BACKGROUND

Patel filed this action in March 2014 against Crown, Alonso, and a host of other individual named and Doe defendants whom she alleged, along with Alonso and Victor Ali, owned Crown and operated it to defraud her of hundreds of thousands of dollars after her husband died.[2] Her complaint alleged against all the defendants causes of action for fraud, false promises, negligent misrepresentations, negligent infliction of emotional distress, negligence per se, accounting, and unfair business practices.

---

[1] Because Victor Ali shares the same last name as many other defendants (see fn. 2 below), we refer to him by his full name for clarity.

[2] Apart from Crown and Alonso, the other named defendants have failed to oppose or respond in any manner to Patel's appeal. Those defendants are: Wahid Ali, Alvin Ali, Haroon Ali, Prabhawati Wati Ali, Rachana Ali, Rita S. Ali, Priscilla Gutierrez, and Frank Hernandez (collectively, the other defendants).

According to Patel's complaint, Alonso, Victor Ali, and the other defendants "all owned and operated Crown," but they utilized the corporate structure for fraudulent purposes. Patel therefore sought to pierce Crown's corporate veil based on allegations that defendants "deliberately undercapitalized their business and are the alter egos of one another, unfairly seeking to deceive and mislead plaintiff."

Patel alleged defendants, as Crown's owners and operators, hatched a "plan . . . to strip [her] of all of her money and assets" for their own use. Once defendants obtained Patel's assets, she alleged they conspired to "hide the assets," and she alleged they fraudulently transferred them "to and among each other and to Does 5-25." According to Patel, another aspect of the plan involved "Victor Ali tak[ing] all responsibility for the loss/fraud [by] fil[ing] bankruptcy. This way, they would have the money and the debt would be discharged, and plaintiff would not be able to find the hidden assets."

More specifically, Patel alleged "[t]he saga" of defendants' fraud against her "began back in 2008." Her husband died in October 2008, leaving her with two young children to support. She had only the equivalent of a sixth grade education, no experience in business, and did not read, write, or understand English well, which she claimed the defendants exploited to obtain her funds. According to Patel's complaint, "By design, defendants always and only dealt with plaintiff when she was alone. Defendants did not want plaintiff to get any professional advice from an outsider or friend."

They plied her with gifts. According to her complaint, "About a week after her husband died, the[] defendants presented plaintiff and her two children with gifts. These were presented under false pretense, to gain plaintiff's trust." Patel's complaint alleged, "The gifts were designed to loosen up the plaintiff . . . and to make her feel beholden to these defendants. Defendants knew that plaintiff was emotionally weak,

3

vulnerable, alone, depressed, lonely and sad," and that "they could take advantage of the plaintiff and her lack of education and experience."

According to Patel's complaint, Victor Ali, "a smooth salesman, . . . acted as the lead spokesman for the other defendants." He was their "pitchman, acting on behalf of the other defendants." After learning Patel would receive $100,000 in life insurance proceeds, Victor Ali contacted her at defendants' behest and offered to help her with her paperwork and bills. He persuaded her to add him as a cosigner on her bank account. Next, according to Patel's complaint, "defendants, with Ali taking the lead, convinced plaintiff to withdraw [all] $200,000 from the retirement account that her husband had set up before he died," and to deposit those funds in her checking account.

Patel then met Victor Ali and another, unknown "agent of . . . the other defendants" at Crown's office, where she signed "a stack of papers" based on their instruction that "it was necessary and beneficial to her and her children." She received no copies of the paperwork, but later learned it was for a loan of $417,000 taken against her home.

According to Patel's complaint, once her checking account and financial position had been plumped up, defendants began "to entice [her] to turn over money to the defendants," apparently in exchange for a position at Crown as a means to support herself and her children. Thus, "[o]ne of the promises that Ali and the others made, was to put plaintiff on the Crown Diamond payroll." In December 2008, for example, Victor Ali promised to "put plaintiff on [Crown's] payroll" in exchange for a $100,000 "loan." Patel wrote him a check for $100,000 from her bank account, and two weeks later Victor Ali increased the amount by writing another check on the account for $200,000. In early January 2009, "Victor Ali and the others shared" in an additional $391,824 of Patel's funds as the proceeds, minus a broker's fee, of the $417,000 loan in her name, again with promises she would be placed on Crown's payroll.

4

Patel alleged defendants obtained a total of $691,824 from her with "no intention of putting [her] on the payroll." Instead, "[d]efendants intended to deceive plaintiff with this false promise and others." When Patel attempted to contact Victor Ali about her promised payroll position, "he talked her in circles [and] ignored the question." According to Patel's complaint, when she sought "something in writing from defendants," Victor Ali simply used the occasion to gain further advantage on defendants' behalf, "ha[ving] plaintiff sign an interest free loan for 11 years o[n] $150,000, involving defendants."

Soon, Patel began to receive late notices on the $417,000 mortgage encumbering her home. Patel called Victor Ali "and the others, trying to find out why the payment[s]," which they had promised to make, "had not been made." While defendants had been easy to reach before they obtained her funds, "calling her all the time, on a daily basis," Patel asserted in her complaint that "[a]fter defendants got [her] money, they avoided plaintiff and avoided all contact with her and would not return [her] phone calls." Patel finally reached Victor Ali in March 2009 to demand he reimburse her funds, but he "refused, stating he didn't have the money."

A year later in March 2010, it appears defendants or Victor Ali may have made at least token repayments because, as Patel acknowledged in her complaint, the principal amount they owed her declined from the original sum of $691,824 to $675,000. As Patel phrased it in her complaint, "defendants finally agreed to pay $7,500 per month, at 8% interest, on the princip[al] of $675,000, which defendants had taken from plaintiff." But Patel came to view the agreement as only another false promise or fraud in defendants' continuing pattern of falsehoods to defraud her. She alleged in her complaint that the March 2010 repayment agreement was merely "a further effort to carry out the conspiracy and to pacify [her]. . . . The agreement was executed, but defendants had no intention of ever *completing* payments. Instead, defendants' conspiracy was to

5

make payments for awhile, and then have Victor Ali declare bankruptcy." (Italics added.)

It is not clear how or why defendants allegedly believed a discharge in bankruptcy for Victor Ali would absolve *them* of their repayment obligation. To the contrary, Patel alleged in her complaint that defendants — and not just Victor Ali — had promised in March 2010 to repay her. Specifically, she alleged she "reasonably relied upon representations, the mannerisms [*sic*?], and the statements and promises of defendants. These representations were repeated on or about March 2, 2010, at which time *defendants* promised to repay plaintiff." (Italics added.)

In any event, plaintiff alleged defendants' conspiracy to take her funds without fully repaying her reached its fulfillment in December 2013, after Victor Ali obtained a discharge in his personal bankruptcy proceeding. Patel alleged: "Before that date, defendants were paying the agreed amount of $7,500 per month to plaintiff. Once the conspiracy was completed, and the bankruptcy was granted to Victor Ali, defendants then stopped paying." As noted, Patel then filed her complaint in this action in March 2014 alleging claims against defendants — but not Victor Ali — for fraud, false promises, negligent misrepresentations, negligent infliction of emotional distress, negligence per se, accounting, and unfair business practices.

Defendants filed both a demurrer and a motion for sanctions under section 128.7. Defendants included as an exhibit a March 2010 agreement in which Crown and Victor Ali had agreed to repay Patel as she alleged in her complaint. Defendants pointed out that the agreement followed and served to settle a lawsuit Patel filed in 2009, in which she alleged Victor Ali, with Alonso's and the other defendants' knowledge and participation, fraudulently induced her to loan money to Crown, and then refused to return the money. Defendants did *not* claim a res judicata bar based on the settlement and dismissal of Patel's 2009 lawsuit rendered her new lawsuit worthy of sanction for lack of an evidentiary or legal basis.

6

Rather, defendants premised their sanctions motion on the bankruptcy court's dismissal under Federal Rules of Civil Procedure, rule 12(b)(6) of Patel's adversary action opposing Victor Ali's bankruptcy discharge. Defendants asserted *that* dismissal rendered Patel's lawsuit against them in this action wholly untenable and improper.

In its tentative ruling, the trial court overruled defendants' demurrer as to Patel's causes of action for fraud, false promises, negligent misrepresentations, accounting, and unfair business practices, and sustained the demurrer with leave to amend on her causes of action for negligent infliction of emotional distress and per se negligence. The court also denied defendants' motion for sanctions and to strike Patel's complaint, observing that it overruled the demurrer on which defendants' based their sanctions motion.

Neither Patel nor her attorney appeared at the hearing on the sanctions motion, where the trial court took the matter under submission and then reversed course from its tentative ruling and granted the motion. The court struck Patel's complaint with prejudice and granted defendants' motion for $12,306.50 in monetary sanctions against Patel and her attorney, to compensate for defendants' attorney fees defending the case. The court summarized its ruling as follows: "Defendants have sufficiently established that the claims alleged in this case have been previously litigated and are therefore barred by the doctrine of res judicata and collateral estoppel. Therefore, the Court finds that Plaintiff's allegations and factual contentions lack evidentiary support, the legal contentions made by Plaintiff are not warranted by existing law, the claims made by Plaintiff in this action were brought for an improper purpose such as to harass or cause unnecessary delay or increase the cost of litigation, and that Plaintiff and her attorney of record have made omissions that appear to be in bad faith designed to mislead the Court."

The court did not specify Patel's or her attorney's alleged omissions, but granted defendants' request for judicial notice of several documents, including Patel's

7

adversary complaint pleadings opposing Victor Ali's bankruptcy petition, the bankruptcy court's orders dismissing those complaints for failure to state a claim on which relief could be granted in federal bankruptcy court, and the bankruptcy court's order granting Victor Ali's bankruptcy discharge.[3]

II

DISCUSSION

Patel contends the trial court erroneously granted defendants' sanctions motion under section 128.7 based on res judicata and collateral estoppel. Section 128.7, subdivision (b), provides, "By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, petition, written notice of motion, or other similar paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met: [¶] (1) It is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. [¶] (2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. [¶] (3) The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. [¶] (4) The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief."

We "review a Code of Civil Procedure section 128.7 sanctions award under the abuse of discretion standard." (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 441.) "The scope of discretion," however, "always resides in the particular law being

_____

[3] We grant defendants' motion to take judicial notice of Victor Ali's personal bankruptcy filing, in which he listed Patel as an unsecured creditor. (Evid. Code, § 459.)

8

applied, i.e., in the 'legal principles governing the subject of [the] action . . . .'" (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.) "Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion." (*Ibid.*) Whether res judicata or collateral estoppel applies under the facts of a particular case poses a question of law. (*Allstate Ins. Co. v. Mel Rapton, Inc.* (2000) 77 Cal.App.4th 901, 907.) Patel argues the trial court erred as a matter of law in applying res judicata and collateral estoppel as the basis for its sanctions award. We agree.

The preclusive effect of a bankruptcy judgment on a party to a later state court action is determined under res judicata principles. (See *Roos v. Red* (2005) 130 Cal.App.4th 870, 879 (*Roos*); see also *Martin v. Martin* (1970) 2 Cal.3d 752, 758-759, italics omitted ["'The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts'"].) "'The doctrine of res judicata rests upon the ground that the party to be affected . . . has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent.'" (*Roos*, at pp. 879-880.)

"The doctrine of res judicata prohibits a second suit between the same parties on the same cause of action." (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 792.) Res judicata extends to the parties' privies. (See, e.g., *Rice v. Crow* (2000) 81 Cal.App.4th 725, 734 [doctrine applies "only to the same causes of action between the same parties or their privies"].)

"Under the requirement of privity, only parties to the former judgment or their privies may take advantage of or be bound by it. [Citation.] A party in this connection is one who is 'directly interested in the subject matter, *and had a right to make a defense, or to control the proceeding, and to appeal from the judgment*.' [Citations.] A privy is one who, after rendition of the judgment, has acquired an interest

9

in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." (*Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 811 (*Bernhard*), italics added; see also *Rodgers v. Sargent Controls & Aerospace* (2006) 136 Cal.App.4th 82, 90-91 (*Rodgers*).) We review a trial court's privity determination de novo ""'because the issue, which ultimately involves the requisites and limits of due process, is a legal one.""'" (*Rodgers*, at p. 91.)

Defendants' res judicata claim on which they premised their sanctions motion failed at the outset because they were neither parties to Patel's adversary action in the bankruptcy proceeding, nor Victor Ali's privies. It is undisputed they were not parties to the action because it arose from *Victor Ali*'s personal bankruptcy petition, not a petition by Crown, Alonso, or any of the other defendants in this case. Nor were they privies because although Patel asserted in her adversary action in the bankruptcy proceeding that *Victor Ali* committed fraud in obtaining and retaining her funds, to the extent Crown or Alonso or the other defendants may have been implicated to a greater or lesser degree, they had no direct interest in the subject matter, nor any right to make a defense, control the proceeding, or appeal from the judgment. (*Bernhard*, *supra*, 19 Cal.2d at p. 811.) They could not intervene in the proceeding, nor assert and control a defense nor appeal as a party or privy because the outcome of the proceeding — Victor Ali's bankruptcy discharge — determined his legal rights and obligations, not theirs.

Defendants claim they are privies because any liability they face in this case is merely derivative as Victor Ali's alleged coconspirators or aiders and abettors, relying on *Richard B. LeVine, Inc. v. Higashi* (2005) 131 Cal.App.4th 566 (*Levine*). In affirming summary judgment, the *Levine* court discussed the solely "derivative liability" of an alleged conspirator whom the evidence showed committed no "direct acts" nor "'actually committed a tort themselves.'" (*Id.* at p. 579.) Here, in contrast, Patel's complaint in this action alleged "Defendants, *and each of them*, conspired, approved, ratified, *and carried out* each step of their conspiracy." (Italics added.) The complaint

10

alleged defendants engaged directly in the fraud, by "tak[ing] from plaintiff" a net sum of $675,000, which they "hid and transferred . . . to and among each other," and which, in another stage of the fraud, they "finally agreed to [re]pay" the sum through Crown as their alter ego, but without intending to complete the repayment.

In sum, unlike in *Levine*, Patel's complaint alleged all of the defendants directly participated in committing their financial torts against her. As our Supreme Court has recently affirmed (see *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 825 (*DKN Holdings*)), and long ago explained, "It is generally recognized that partners are not in such privity with one another that a judgment against one partner in an action brought against him personally on a tort arising out of the partnership business is res judicata when the same issues are raised in subsequent litigation against another partner." (*Dillard v. McKnight* (1949) 34 Cal.2d 209, 214.) *Levine* is also distinguishable because the alleged conspirator's noninvolvement there was decided at the summary judgment stage. Here, in contrast, at the pleading stage the trial court may only look to "whether a plaintiff has stated a hypothetical case" instead of "whether or not it can be proven." (*Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 962.)

The trial court found the privity requirement of res judicata satisfied here based on its conclusion the "'relationship between the party to be estopped and the unsuccessful party in the prior litigation . . . is "sufficiently close" so as to justify application of the doctrine of collateral estoppel.'" Collateral estoppel is an aspect of res judicata. (*Roos*, *supra*, 130 Cal.App.4th at p. 879.) As noted, res judicata "precludes parties or their privies from relitigating a *cause of action*," and in this sense "has traditionally been referred to as 'res judicata' or 'claim preclusion.'" (*Ibid.*, original italics.)

In addition to claim preclusion, "[r]es judicata also includes a broader principle . . . commonly referred to as 'collateral estoppel' or 'issue preclusion.' Under this principle an *issue* necessarily decided in prior litigation may be conclusively

11

determined as against the parties or their privies in a subsequent lawsuit on a different cause of action." (*Roos*, *supra*, 130 Cal.App.4th at pp. 879-880.)

Like res judicata, collateral estoppel requires that the person or entity asserting it was a party to the previous action or in privity with the party, among other requirements. "'Collateral estoppel applies when (1) the party against whom the plea is raised was a party or was in privity with a party to the prior adjudication, (2) there was a final judgment on the merits in the prior action and (3) the issue necessarily decided in the prior adjudication is identical to the one that is sought to be relitigated.'" (*Roos*, *supra*, 130 Cal.App.4th at pp. 879-880.)

The trial court's privity analysis misses the mark. Of course "'the party to be estopped and the unsuccessful party in the prior litigation'" were close here because they were one and the same: Patel. But the relevant question was whether Crown, Alonso, and the other defendants were in privity with Victor Ali in the bankruptcy proceeding.

The trial court concluded Victor Ali's relationship with them "is sufficiently close . . . *such that he represented the same legal rights*, and therefore Defendants are in privity with Victor Ali in the prior bankruptcy proceeding." (Italics added.) But as discussed, Victor Ali represented only himself and his own interests in the bankruptcy litigation, not the defendants. *His* interests were at stake; they had no rights in the action to turn over to him, such as to defend or control the action on their behalf, nor to appeal. The point is illustrated by considering codefendants in a conspiracy action. Each necessarily places his or her interests first and foremost, including the decision whether to testify against other defendants or potential defendants, and therefore would be surprised at the notion he or she necessarily represents the others, particularly where each is an alleged direct tortfeasor. Similarly, as discussed, business partners are not in privity for purposes of subsequent preclusion, especially as here where plaintiff alleged they were independently liable. (*DKN Holdings*, *supra*, 61 Cal.4th at p. 825.)

12

In any event, the trial court's ruling fails for an additional reason. "[A] primary factor in determining whether to give collateral estoppel effect to a prior final judgment is whether the record in the former proceeding adequately reflects the issues actually litigated and decided in that proceeding." (*Pitzen v. Superior Court* (2004) 120 Cal.App.4th 1374, 1384.) "The party asserting collateral estoppel bears the burden of establishing [its] requirements." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.) The same is true for res judicata. "The burden of proving that the requirements for application of res judicata have been met is upon the party seeking to assert it as a bar or estoppel." (*Vella v. Hudgins* (1977) 20 Cal.3d 251, 257 (*Vella*).)

In *Vella*, for example, a party had raised in the prior proceeding affirmative defenses of waiver, equitable estoppel, and tender, and sought judgment on those grounds based on a claim of res judicata. But as the Supreme Court explained, "The record offered in support of the plea of res judicata is virtually barren. . . . The sparse record presented to us fails to show either the precise nature of the factual issues litigated, or the depth of the court's inquiry. We decline to assume, given the summary character of this type of action, that the mere pleading of a defense without objection by the adverse party necessarily demonstrates adequate opportunity to litigate the defense." (*Vella*, *supra*, 20 Cal.3d at p. 258.)

The same is true here. Defendants produced from the bankruptcy action Patel's pleadings and the bankruptcy court's summary rulings dismissing each complaint in turn for failure to state a cause of action on which relief could be granted. (Fed. Rules of Civ. Proc., rule 12(b)(6).) But defendants did not provide for the trial court the motions Victor Ali made to garner those rulings. As Patel observes, the bankruptcy court may have entered the summary dismissal orders simply because of pleading faults. Or, even assuming arguendo that Victor Ali addressed in his opposition to Patel's complaints *defendants'* alleged involvement in the series of frauds Patel alleged, the bankruptcy court may have concluded no claim lay at that time against the defendants if they were at

13

that time making their payments, as Patel alleges in her lawsuit here. These and other various, plausible bases for the bankruptcy court's dismissal of Patel's adversary action demonstrate it is speculative to conclude, as defendants assert, that the bankruptcy court necessarily decided in the previous action that they bore no liability for their alleged fraud. Defendants therefore failed to meet their burden to establish they were entitled to sanctions and a judgment of dismissal based on res judicata and collateral estoppel grounds.

Defendants assert federal preemption as an alternative basis on which to uphold the sanctions order and the judgment, though they did not raise it below. The short answer is that on the sensitive issue of sanctions, particularly terminating sanctions and substantial monetary sanctions, Patel and her attorney were entitled to an opportunity to meet and rebut in the trial court each and every argument for sanctions. Sanctions may not be awarded ex parte. (*Sole Energy Co. v. Hodges* (2005) 128 Cal.App.4th 199, 208.) Patel and her attorney had notice and an opportunity to defend against the sanctions motion, so it was not ex parte *on the issues defendants raised below*. But Patel and her attorney had no notice or opportunity in the trial court to defend against the theory of preemption defendants now propose. Accordingly, we decline to affirm the sanctions motion on a ground not raised or argued below.

Moreover, defendants' preemption argument fails on the merits. Defendants argue Patel's claims in this action are preempted because they "are entirely predicated on the claimed wrongful filing of a bankruptcy petition and necessarily relate to the management of the bankruptcy process." In other words, defendants cast Patel's case as claim of fraud on the bankruptcy court, and therefore "exclusive jurisdiction belongs to the bankruptcy court." Not so. Patel does not challenge Victor Ali's bankruptcy discharge, and has not sued him here. Instead, Patel in this action seeks redress for defendants' alleged frauds against *her* in obtaining and retaining her funds, not for any alleged fraud against the bankruptcy court.

14

## III

## DISPOSITION

The judgment and the trial court's order granting defendants' sanction motion are reversed.  Appellants are entitled to their costs on appeal.


ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


FYBEL, J.

Filed 4/29/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RITA PATEL et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>CROWN DIAMONDS, INC., et al.,<br><br>    Defendants and Respondents. | G051439<br><br>(Super. Ct. No. 30-2014-00713449)<br><br>ORDER MODIFYING OPINION AND DIRECTING PUBLICATION; NO CHANGE IN JUDGMENT |

The opinion filed March 30, 2016, is MODIFIED as follows:

(1)  On page 2, in the last sentence of the first new paragraph, change "again" to "against" so that the sentence ends ". . . monetary sanctions against Patel and her attorney."

(2)  On page 2, in the first sentence of the second new paragraph, delete "individual" so that the clause reads "and a host of other named and Doe defendants . . . ."

(3)  On page 4, in the first sentence of the third new paragraph, replace "had been plumped up" with "ballooned" so that the clause reads "once her checking account and financial position ballooned . . . ."

(4)  On page 10, in the middle of the first new paragraph, delete the italics on Victor Ali's name, so that the clause states "that Victor Ali committed fraud . . . ."

16

(5)  On page 12, delete the first sentence of the second new paragraph ("The trial court's privity analysis misses the mark"), and replace it with the following new sentence:  "A privity defense does not apply here."

(6)  On page 12, in the fourth sentence of the third new paragraph, insert "civil" before the word "conspiracy" so that the sentence ends ". . . in a civil conspiracy action."

(7)  On page 12, delete the fifth sentence (beginning "Each necessarily places . . .") in the third new paragraph, and replace it with the following new sentence:  "Each advances his or her own interests, and therefore does not necessarily represent the others, particularly where each is an alleged direct tortfeasor."

(8)  On page 13, at the end of the fourth sentence of the third new paragraph, change "faults" to "defects" so that the sentence ends ". . . simply because of pleading defects."

These modifications do not change the judgment.

The opinion appears to meet the standards for publication.  (Cal. Rules of Court, rule 8.1105(c).)  The request for publication by Radoslovich Parker Turner, a law firm not associated with any of the parties, is therefore GRANTED.


ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


FYBEL, J.

17