Filed 6/10/21  Nijjar v. Nijjar CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| PARMINDER KAUR NIJJAR,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SAWARN SINGH NIJJAR, as represented, etc.,<br><br>Defendant and Respondent. | F078265<br><br>(Super. Ct. No. 8009802)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Stanislaus County.  Alan K. Cassidy, Judge.

Law Office of P. Fateh K. Sahota and P. Fateh K. Sahota for Plaintiff and Appellant.

Law Office of Daniel A. Presher, Daniel A. Presher for Heather Fisher, Conservator of the Estate of Sawarn Singh Nijjar; Broderick Legal Group and William Broderick-Villa for Rani Nijjar, Conservator of the Person of Sawarn Singh Nijjar, for Defendant and Respondent.

-ooOoo-

After the court in a separate conservatorship action denied appellant Parminder Kaur Nijjar's (also known as Parminder Kaur Phagura) (Parminder's)[1] claim that she was married to respondent, conservatee Sawarn Singh Nijjar (Sawarn), Parminder filed her petition in this proceeding seeking a determination that she is Sawarn's putative spouse (petition or putative spouse petition). Heather Fisher (Fisher), the conservator of Sawarn's estate, filed a motion for sanctions, asserting the petition was legally and factually frivolous and was filed for an improper purpose. The trial court granted Fisher's motion, dismissed the petition, and imposed monetary sanctions against Parminder's attorney. Parminder appeals. We affirm, finding no abuse of discretion in the trial court's imposition of sanctions.

## FACTUAL AND PROCEDURAL BACKGROUND

Parminder claimed to be the wife of conservatee Sawarn. In the conservatorship action, the trial court ordered Parminder to provide it with written proof that she and Sawarn were married in a certified marriage in Punjab, India; if she was not able to do so, Sawarn's daughter from his first marriage, Rani Nijjar (Rani), who is the conservator of Sawarn's person, was authorized to deny the existence of a valid marriage. When Parminder failed to provide any written proof of the alleged marriage, a trial of that issue was held in the conservatorship action. In its ruling in that action, the trial court summarized the testimony of the witnesses; multiple witnesses produced by Parminder testified they attended the wedding of Parminder and Sawarn in May 1997, at a Sikh temple in Parminder's village in Punjab, India. Parminder testified she married Sawarn at the Sikh temple in her village on May 24, 1997, with friends and family members present. The trial court noted "[t]his testimony was in stark contrast to [Parminder]'s testimony at a prior hearing several months ago, in which she told the Court that the

---

**1**      We refer to some parties by their first names for clarity and convenience, because they share a last name. No disrespect is intended.

2.

wedding ceremony was 'in secret' because both she and [Sawarn had] previously been married and that 'no one except the priest' attended the service." On cross-examination at the trial, Parminder testified she married Sawarn in 1996; she referred to the contrary testimony as "a pack of lies." She stated she married Sawarn before he became a United States citizen; after he became a citizen, "he and [Parminder] wrote a false date on the immigration papers so that [Parminder]'s application would be handled more quickly." The trial court found it had no competent evidence before it that a legal marriage took place, and Parminder had failed to meet her burden of proving she was married to Sawarn.

Subsequently, Parminder filed the petition for determination that she is the putative spouse of Sawarn. In her verified petition, Parminder stated she and Sawarn were married on May 12, 1996, in a Sikh religious ceremony, before a Sikh priest, in Punjab, India. She subsequently used Sawarn's last name; the couple resided together in a neighboring town for a few months, until Sawarn returned to the United States, where he was a legal resident.[2] Sawarn became a United States citizen on February 28, 1997; in September 1998, Sawarn filed for Parminder's immigration visa with documents indicating she was his wife. On May 15, 1999, Parminder moved to the United States, where she and Sawarn lived together as husband and wife until 2015, when Rani, as conservator of Sawarn's person, moved him into Rani's home. From 1999 through 2014 or 2015, Parminder and Sawarn filed joint tax returns, held joint bank accounts, and represented to others that they were husband and wife.

The petition stated the Indian marriage certificate (apparently the only marriage certificate proffered by either party) showed a marriage date of May 24, 1997; the certificate was authenticated by Sawarn when he submitted it with Parminder's immigration documents, but there was no certified copy of it in India. Parminder alleged

---

[2] She stated Sawarn was then a citizen of "England/United Kingdom."

3.

that, at the trial to determine her marital status, due to the inconsistency between the date on the marriage certificate and the actual date of marriage, "[Parminder] was compelled to 'choose' a date." At that trial, she failed to prove she was actually married to Sawarn, either on May 24, 1997 or in May 1996. The petition asserted she had no reason to believe she was not married to Sawarn and "no recourse but to seek the status of [p]utative spouse."

On February 13, 2018, after the putative spouse petition was filed, the conservator of Sawarn's estate, Fisher, served on Parminder's counsel a motion seeking an award of sanctions pursuant to Code of Civil Procedure section 128.7,[3] including monetary sanctions against Parminder's attorney and dismissal of the petition. The motion was based on assertions that the petition was frivolous and filed for improper purposes. Parminder took no action in response to service of the motion within the statutory 21-day period for withdrawing or correcting the challenged pleading; Fisher then re-served and filed the motion with a hearing date of June 19, 2018. Parminder filed opposition. After a hearing, the trial court granted the motion; it dismissed the petition and imposed monetary sanctions against Parminder's attorney. Parminder appeals from the sanctions order.

**DISCUSSION**

**I.     Appealability**

"The existence of an appealable judgment is a jurisdictional prerequisite to an appeal. A reviewing court must raise the issue on its own initiative whenever a doubt exists as to whether the trial court has entered a final judgment or other order or judgment made appealable by Code of Civil Procedure section 904.1." (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.)

---

**3**     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

4.

According to her notice of appeal, Parminder is appealing from an August 6, 2018 order, pursuant to section 904.1, subdivision (a)(3) through (13). Her appellant's appendix (the appendix), however, does not include any order bearing that date. The only document listed in the appendix's index with that date is a notice of entry of a minute order that was entered on June 19, 2018. Parminder's opening brief asserts she is appealing from the June 19, 2018 order granting dismissal of her putative spouse petition and imposing monetary sanctions. The statement of appealability in her brief does not indicate under what statutory provision the order is appealable. Fisher "agrees" with Parminder that the order appealed from is an appealable order, citing section 904.1, subdivision (a)(10).

Section 904.1, subdivision (a)(10), makes an order appealable if it is "made appealable by the Probate Code or the Family Code." The parties have not cited any provision of the Probate Code or Family Code that makes the sanctions order appealable.

Section 904.1, subdivision (a)(11) and (12) makes appealable an order or interlocutory judgment directing payment of monetary sanctions in excess of $5,000. The award of monetary sanctions in this case, however, was $3,617.50, an amount less than $5,000; therefore, it was not immediately appealable under either of those subdivisions.

The order granting dismissal and awarding monetary sanctions would be reviewable as part of an appeal from the judgment of dismissal. The appendix, however, does not contain any judgment of dismissal.

The California Rules of Court allow us to "treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment." (Cal. Rules of Court, rule 8.104(d)(2).) Here, however, the record does not reflect that a judgment of dismissal was ever entered. Nonetheless, Fisher has not moved to dismiss the appeal, but expressly agreed that the order was appealable. The substantive issues on appeal have been fully briefed by the

parties. In the interests of justice and to prevent unnecessary delay, we deem the June 19, 2018 order granting dismissal of Parminder's putative spouse petition and imposing monetary sanctions as incorporating a judgment of dismissal, and treat Parminder's notice of appeal as applying to the judgment. (See *Nowlon v. Koram Ins. Center, Inc.* (1991) 1 Cal.App.4th 1437, 1440–1441.)

The monetary sanctions award was imposed only against Parminder's attorney. When sanctions are imposed against the party and their attorney, the better practice is for the sanctioned attorney to file a separate notice of appeal. We may, however, liberally construe the notice of appeal to include the attorney who filed the appeal on behalf of the party. (*Kane v. Hurley* (1994) 30 Cal.App.4th 859, 861, fn. 4; *Eichenbaum v. Alon* (2003) 106 Cal.App.4th 967, 974; see Cal. Rules of Court, rule 8.100(a)(2).) We so construe the notice of appeal, and review the monetary sanctions order applicable to the attorney, in addition to the dismissal sanction applicable to Parminder.

## II.     Standard of Review

"We review a Code of Civil Procedure section 128.7 sanctions award under the abuse of discretion standard. [Citation.] We presume the trial court's order is correct and do not substitute our judgment for that of the trial court. [Citation.] To be entitled to relief on appeal, the court's action must be sufficiently grave to amount to a manifest miscarriage of justice." (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 441 (*Peake*).)

"When applying the deferential abuse of discretion standard, 'the trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' " (*In re C.B.* (2010) 190 Cal.App.4th 102, 123.)

## III.    Standards for Imposition of Sanctions

The monetary and dismissal sanctions in this case were imposed pursuant to section 128.7. Section 128.7, subdivision (a), requires that every pleading be signed by

6.

the attorney for a represented party, and subdivision (b) explains the effect of signing and filing a pleading with the court:

> "(b) By presenting to the court, whether by signing, filing, submitting, or later advocating, a … petition, … an attorney … is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met:
>
>> "(1) It is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>>
>> "(2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.
>>
>> "(3) The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."  (§ 128.7, subd. (b)(1), (2), (3).)

The statute provides that sanctions may be imposed on an attorney or party who violates subdivision (b), after notice and a reasonable opportunity to respond.  (§ 128.7, subd. (c).)  It requires that a motion for such sanctions be served on the party to be sanctioned at least 21 days before it is filed with the court.  (§ 128.7, subd. (c)(1).)  The motion may only be filed with the court if the challenged pleading or paper is not withdrawn or appropriately corrected within the 21-day period.  (*Ibid*.)

"The purpose of section 128.7 is to deter frivolous filings.  That purpose is advanced by allowing the offending party to withdraw or amend a sanctionable paper after being alerted to the violation."  (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 826.)  If the party who filed a challenged pleading dismisses it within the 21-day "safe harbor" period, the motion for sanctions may not be filed and no sanctions may be imposed.  If, however, the party does not dismiss the challenged pleading, the court has authority to grant the motion and impose sanctions on the party or

7.

the attorney for presenting an improper pleading. (*Eichenbaum v. Alon*, *supra*, 106 Cal.App.4th at p. 975.) "By providing this safe harbor period, the Legislature designed the statute to be 'remedial, not punitive.' [Citation.] When a party does not take advantage of the safe harbor period, the 'statute enables courts to deter or punish frivolous filings which disrupt matters, waste time, and burden courts' and parties' resources.' " (*Peake*, *supra*, 227 Cal.App.4th at p. 441.)

Fisher's motion for sanctions was based on the three grounds described in the statute above: (1) the petition was brought primarily for an improper purpose, to harass or cause unnecessary delay; (2) the petition was legally frivolous; and (3) the petition was factually frivolous in that it lacked evidentiary support. "A claim is factually frivolous if it is 'not well grounded in fact' and is legally frivolous if it is 'not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.' [Citation.] In either case, to obtain sanctions, the moving party must show the party's conduct in asserting the claim was objectively unreasonable. [Citation.] A claim is objectively unreasonable if 'any reasonable attorney would agree that [it] is totally and completely without merit.' " (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 189.)

## IV.    Legally or Factually Frivolous

Parminder sought a determination pursuant to Family Code section 2251 that she is the putative spouse of Sawarn. Family Code section 2251 provides, in pertinent part: "If a determination is made that a marriage is void or voidable and the court finds that either party or both parties believed in good faith that the marriage was valid, the court shall: [¶] (1) Declare the party or parties, who believed in good faith that the marriage was valid, to have the status of a putative spouse." (Fam. Code, § 2251, subd. (a)(1).) Thus, to bring herself within the statute, Parminder would be required to prove (1) a marriage that was void or voidable and (2) her good faith belief that the marriage was valid.

### A.    Void, voidable, or invalid marriage

The Family Code defines incestuous, bigamous, and polygamous marriages as void; it defines certain other marriages, such as those involving an underage party, a party of unsound mind, or a party whose consent was obtained by fraud, as voidable.  (Fam. Code, §§ 2200, 2201, 2210.)  Parminder's claim to putative status is not based on a claim of a void or voidable marriage.

While Family Code section 2251 by its express terms "requires a threshold determination of a void or voidable marriage," the statute merely codified prior substantive case law.  (*In re Marriage of Vryonis* (1988) 202 Cal.App.3d 712, 718, disapproved on another ground in *Ceja v. Rudolph & Sletten, Inc.* (2013) 56 Cal.4th 1113, 1128, fn. 12 (*Ceja*).)  Under prior law, "it was well settled the essential basis of a putative marriage was a belief in the existence of a valid marriage."  (*Ibid.*)  "[C]odification of the putative marriage doctrine … was not intended to narrow the application of the doctrine only to parties to a void or voidable marriage.  Instead, the Legislature contemplated the continued protection of innocent parties who believe[d] they were validly married."  (*Id.* at p. 719.)  Accordingly, the statute simply requires "a threshold determination that a legal infirmity in the formation renders a marriage invalid."  (*Ibid.*)

Putative spouse status has often been conferred when parties attempted to marry, but unknown to one party, the other was still married to someone else.  (*Ceja*, *supra*, 56 Cal.4th 1113; *In re Marriage of Guo & Sun* (2010) 186 Cal.App.4th 1491, disapproved on another ground in *Ceja*, at p. 1128, fn. 12; *In re Marriage of Tejeda* (2009) 179 Cal.App.4th 973.)  As one court stated:  "[I]n the majority of cases, the de facto wife attempted to meet the requisites of a valid marriage, and the marriage proved invalid only because of some essential fact of which she was unaware, such as the earlier undissolved marriage of one of the parties [citations], a consanguineous relation between the parties [citations], or the failure to meet the requirement of solemnization."  (*Vallera*

9.

*v. Vallera* (1943) 21 Cal.2d 681, 684.)  A putative marriage has also been found where the parties attempted to marry in Mexico, but the marriage was invalid because it was never recorded as required by Mexican law (*Estate of Leslie* (1984) 37 Cal.3d 186).

Parminder's petition for determination of her putative spouse status did not allege a void, voidable, or invalid marriage.  It stated she and Sawarn were married in a Sikh religious ceremony in Punjab, India "on or about May 12, 1996."  It was the second marriage of both parties; Sawarn's first wife had passed away many years earlier, and Parminder had obtained a legal divorce from her first husband prior to her marriage to Sawarn.  Sawarn became a United States citizen on February 28, 1997, and in September 1998 applied for an immigration visa for Parminder, indicating she was his wife. Parminder came to the United States on May 15, 1999, and she and Sawarn lived together as husband and wife from then until 2015.  The petition asserted "Sawarn's own biological siblings, and nieces, and other relatives will testify that [Parminder] and Sawarn were lawfully married and were and are husband and wife."  Thus, the petition alleged an actual marriage in 1996, and did not identify any facts making it void, voidable, or invalid due to legal infirmity.

Fisher's motion for sanctions asserted, among other things, that the facts pled were insufficient to prove the existence of a putative marriage, and there were no facts that would allow Family Code section 2251 to apply to Parminder.  Fisher argued that the facts stated in the petition failed to state a claim under the statute, and they lacked evidentiary support because "for the most part the facts stated would not be admissible at a hearing or trial because the Court already found in a separate matter that is res judicata to this, that such facts do not exist."  Fisher discussed the prior trial in the conservatorship action, which resulted in an order finding Parminder had failed to prove that she was in fact married to Sawarn; this court affirmed the order.  Fisher concluded the question of whether Sawarn and Parminder were married had been ruled on and was res judicata as to the parties, so Parminder could not again assert that the parties were actually married.

10.

Fisher then pointed out Parminder had not identified any grounds on which her purported marriage was void or voidable.

After receiving Fisher's motion for sanctions, Parminder did not take advantage of the safe harbor period to withdraw or amend her petition. She did not add any facts showing how her purported marriage was void, voidable, or otherwise invalid. In her opposition to the motion for sanctions, Parminder asserted that the marriage need not be void or voidable in order for Family Code section 2251 to apply; it was sufficient if the marriage was found invalid due to some legal infirmity. Neither the putative spouse petition nor the opposition to the sanctions motion, however, included any facts showing the purported marriage was, or was found to be, invalid due to some legal infirmity. Parminder's opposition asserted, without citation to legal authority, that the court's determination in the conservatorship action—that she failed to prove the fact of her marriage to Sawarn—was a sufficient basis on which to apply the provisions of Family Code section 2251. The trial court in the conservatorship action, however, did not find there was an attempted or purported marriage that was invalid due to some legal infirmity. It simply found Parminder failed to prove there was an actual marriage.

As Fisher contended, the order denying the fact of marriage is res judicata and the existence of an actual marriage cannot be relitigated. " 'The doctrine of res judicata prohibits a second suit between the same parties on the same cause of action.' " (*Patel v. Crown Diamonds, Inc.* (2016) 247 Cal.App.4th 29, 37.) " ' "The doctrine of res judicata rests upon the ground that the party to be affected ... has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of [their] opponent." ' " (*Ibid*.) Res judicata includes concepts of claim preclusion and issue preclusion. (*In re Marriage of Garcia* (2017) 13 Cal.App.5th 1334, 1344.) "Claim preclusion, sometimes referred to as res judicata, ' "prevents relitigation of the *same cause of action* in a second suit between the same parties or parties in privity with

11.

them." ' [Citation.] Issue preclusion, which is also known as collateral estoppel, 'prohibits the relitigation of *issues* argued and decided in a previous case, even if the second suit raises different causes of action' and can be asserted only against a party or one in privity with a party to the first lawsuit." (*Id*. at p. 1345.)

"The prerequisite elements of res judicata in its claim preclusion form are (1) the claim in the present action must be identical to a claim litigated or that could have been litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." (*Bucur v. Ahmad*, *supra*, 244 Cal.App.4th at p. 185.) " 'If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable.' " (*Ibid*.)

In the conservatorship action, Parminder claimed she and Sawarn were married in Punjab, India, and later came to California, where they lived as a married couple. The petition for determination that Parminder is the putative spouse of Sawarn was based on the same claim. It did not assert Sawarn and Parminder had a void, voidable, or invalid marriage that they, in good faith, believed was legal. Rather, it asserted they actually married, although on a date different from the date claimed at the trial in the conservatorship action; it also asserted Parminder had witnesses who would testify to the marriage.

Thus, the claim presented by the putative spouse petition was identical to the claim litigated in the conservatorship action, or was one that could have been litigated in that trial. The putative spouse petition stated that Rani attacked the validity of Parminder's

12.

claimed marriage to Sawarn based upon an Indian marriage certificate that reflected a marriage date of May 24, 1997, the same date set out in Parminder's immigration application. Sawarn authenticated the marriage certificate before a California notary in December 1999. Parminder asserted that, "[d]ue to the inconsistent dates set forth in the uncertified marriage certificate and the actual date of [Parminder] and Sawarn's marriage, [Parminder] was compelled to 'choose' a date." Parminder chose to base her marriage claim on the May 24, 1997 date, which she later admitted was false.

After testifying at the conservatorship trial that the marriage took place in 1997, on cross-examination, Parminder testified she and Sawarn were married in 1996. "When questioned about the discrepancy in the date of marriage, Parminder turned to the Court and said, 'Do you want me to tell you the truth, or just continue to tell a pack of lies?' " After being encouraged to tell the truth, Parminder testified she married Sawarn in 1996, before he became a United States citizen. "After he became a citizen, he and [Parminder] wrote a false date on the immigration papers so that [Parminder]'s application would be handled more quickly. Then [Parminder] admitted that everyone who said she was married in 1997 was not telling the truth."

The putative spouse petition alleges the Parminder and Sawarn were married in 1996, rather than 1997. Whether and when they married, however, were issues presented and decided in the conservatorship trial that resulted in an order denying the fact of marriage. Parminder appealed that denial, we affirmed the order, and the order is now final. The same parties—Sawarn through his conservators and Parminder—litigated the trial in the conservatorship action. Accordingly, the order denying the fact of a marriage between Parminder and Sawarn is a final determination and Parminder may not relitigate that issue in the guise of seeking a determination that she is Sawarn's putative spouse.

Parminder contends the trial court erroneously determined res judicata barred her petition for putative spouse status because the trial court cited the wrong order as the prior order with res judicata effect. The ruling on the motion for sanctions stated that

13.

"the denial of [Parminder]'s putative spouse petition" in the conservatorship action on February 9, 2018, involved the same parties and the same issue, and was terminated on the merits adversely to Parminder, and therefore barred the putative spouse petition based on res judicata. The record does not include any order dated February 9, 2018, from the conservatorship action.

The sanctions motion asserted Parminder's putative spouse petition was barred by res judicata based on the August 15, 2016 order in the conservatorship action denying the fact of marriage. "Whether res judicata or collateral estoppel applies under the facts of a particular case poses a question of law." (*Patel v. Crown Diamonds, Inc.*, *supra*, 247 Cal.App.4th at p. 37.) Although the trial court's reference to the prior conservatorship order was inaccurate, we conclude the trial court was correct in its determination that the putative spouse petition was barred by res judicata; it presented the same issue that the same parties had litigated already in the trial at which Parminder failed to prove she was actually married to Sawarn. In that proceeding, Parminder had an opportunity to present whatever evidence she had to prove a legal marriage between her and Sawarn. She chose to attempt to prove that the marriage occurred on May 24, 1997, which she later admitted was a false date. She could have, but did not, attempt to prove a legal marriage on May 12, 1996, if, as she now contends, that was the true date of their marriage. The question whether Parminder was in fact legally married to Sawarn has been litigated to a final determination and is res judicata.

## B.     Good faith belief in legality of marriage

The motion for sanctions asserted the petition for putative spouse status failed to allege a good faith belief in the legality of Sawarn and Parminder's marriage. In order for the court to find that a party is a putative spouse, that party must have "believed in good faith that the marriage was valid." (Fam. Code, § 2251, subd. (a).) This means the party must have had a good faith belief the marriage was lawful, not just that it was valid according to the party's religious beliefs. (*In re Marriage of Vryonis*, *supra*,

14.

202 Cal.App.3d at pp. 719, 724.) Thus, the petition for a determination that Parminder was a putative spouse was required to assert Parminder's belief that she and Sawarn were lawfully married in accordance with Indian law,[4] but the petition did not. After Fisher served the motion for sanctions on Parminder, Parminder did not amend her petition during the safe harbor period to cure this defect.

The opposition to the sanctions motion did not present any evidence of Parminder's good faith belief in a valid marriage between her and Sawarn, that proved to be invalid due to some legal infirmity. The opposition was supported only by the declaration of Parminder's attorney, which is unsigned in the record before us. There was no declaration of Parminder attesting to her good faith belief.

Parminder contends the finding that she lacked a good faith belief in the validity of the marriage was not supported by substantial evidence, because the trial court applied the wrong standard. She argues the test of good faith is a subjective standard, determining whether the party actually believed there was a lawful marriage, rather than an objective standard applying a reasonable person test, and the subjective test must be applied in light of the totality of the circumstances. Parminder complains the trial court applied an objective test and denied her the opportunity to prove all the relevant circumstances.

In *In re Marriage of Vryonis*, the trial court determined Fereshteh was the putative spouse of Speros. (*In re Marriage of Vryonis, supra*, 202 Cal.App.3d at p. 714.) The parties had participated in a private marriage ceremony at Fereshteh's apartment, after which they kept the marriage a secret, did not live together, and did not hold themselves out as husband and wife. (*Id*. at p. 715.) "According to Fereshteh, the marriage

---

[4]     A foreign marriage is valid in California if it "would be valid by laws of the jurisdiction in which the marriage was contracted." (Fam. Code, § 308.)

15.

conformed to the requirements of a time-specified 'Muta' marriage, authorized by the Moslem sect of which she was an adherent." (*Ibid*.)

The reviewing court reversed the trial court's decision, stating: "A proper assertion of putative spouse status must rest on facts that would cause a reasonable person to harbor a good faith belief in the existence of a valid marriage. Where there has been no attempted compliance with the procedural requirements of a valid marriage, and where the usual indicia of marriage and conduct consistent with a valid marriage are absent, a belief in the existence of a valid marriage, although sincerely held, would be unreasonable and therefore lacking in good faith." (*In re Marriage of Vryonis*, *supra*, 202 Cal.App.3d at p. 721.)

The Supreme Court subsequently rejected the reasonable person standard. (*Ceja*, *supra*, 56 Cal.4th at p. 1116.) In the context of determining whether a party was the decedent's putative spouse for purposes of bringing a wrongful death action, it interpreted the phrase " '*believed in good faith* that the marriage to the decedent was valid,' " as used in section 377.60, subdivision (b). (*Ceja*, at pp. 1115–1116.) The court held:

> "We conclude section 377.60 contemplates a subjective standard that focuses on the alleged putative spouse's state of mind to determine whether he or she maintained a genuine and honest belief in the validity of the marriage. Good faith must be judged on a case-by-case basis in light of all the relevant facts, such as the efforts made to create a valid marriage, the alleged putative spouse's background and experience, and the circumstances surrounding the marriage, including any objective evidence of the marriage's invalidity. Under this standard, the reasonableness of the claimed belief is a factor properly considered along with all other circumstances in assessing the genuineness of that belief. The good faith inquiry, however, does not call for application of a reasonable person test, and a belief in the validity of a marriage need not be objectively reasonable." (*Ceja*, *supra*, 56 Cal.4th at p. 1116.)

After quoting *Ceja*'s rejection of the reasonable person standard, and its statement that "objective circumstances pointing to a marriage's invalidity is a factor properly

considered as part of the totality of the circumstances in determining whether the belief was genuinely and honestly held" (*Ceja*, *supra*, 56 Cal.4th at p. 1115), the trial court opined that Parminder's admission during the conservatorship trial of telling a pack of lies under oath was a concession that she knew the marriage certificate offered as proof of a solemnized wedding was not authentic. The trial court concluded Parminder could not "reasonably claim a subjective good faith belief in the validity of the marriage as a matter of law"; and "no reasonable person—whether party or attorney—could claim otherwise." Based on these statements, Parminder argues the trial court imposed an objective test of good faith, contrary to the rule set out by the Supreme Court in *Ceja*.

The issue the trial court was considering, however, was not whether Parminder had proven she was a putative spouse of Sawarn. The issue was whether she had brought a factually or legally frivolous claim when she filed her putative spouse petition. That issue presents the question whether " 'the party's conduct in asserting the claim was objectively unreasonable. [Citation.] A claim is objectively unreasonable if "any reasonable attorney would agree that [it] is totally and completely without merit." ' " (*McCluskey v. Henry* (2020) 56 Cal.App.5th 1197, 1205.)

In any event, substantial evidence supported the trial court's finding that the petition was factually frivolous. The conservatorship court had already determined no actual marriage had been proven, and Parminder was not entitled to relitigate that claim. The verified petition did not state that Parminder believed in good faith that she had entered into a valid marriage to Sawarn; it also did not identify any legal infirmity, not known to Parminder at the time, that rendered the marriage invalid. "Because a trial court has broad discretion in ruling on a sanctions motion, it is incumbent on the party opposing the motion to proffer all factual and legal theories showing the party's challenged assertions were not frivolous and had at least some merit." (*Peake*, *supra*, 227 Cal.App.4th at p. 443.) The opposition to the motion for sanctions only needed to present sufficient evidence to show there was a nonfrivolous basis for the petition. It

failed to present any evidence of a good faith belief in the validity of the claimed marriage, or of a legal infirmity rendering an apparently valid marriage invalid.

We conclude the trial court did not abuse its discretion in imposing sanctions against Parminder and her attorney for bringing a legally and factually frivolous petition to determine Parminder's status as a putative spouse. The petition alleged only an actual marriage, not a putative marriage that Parminder believed in good faith was valid, but that was invalid due to some legal infirmity. Further, in opposition to the motion, she failed to proffer any evidence supporting either element of her claim, to demonstrate the claim was not frivolous.

## V.  Improper Purpose

Another ground on which the trial court imposed sanctions was its finding that the petition was brought for an improper purpose. It found the petition was filed "to cause unnecessary delay—specifically, to permit the filing of a *lis pendens* so as to prevent the residence sale" in the conservatorship action, "and to needlessly increase the costs of litigation, despite [Parminder]'s knowledge that funds of the estate are scarce." Parminder contends substantial evidence does not support the finding of an improper purpose.

"An appealed judgment is presumed correct, and the appellant must affirmatively demonstrate error. [Citation.] An appellant challenging the sufficiency of the evidence to support the judgment must cite the evidence in the record supporting the judgment and explain why such evidence is insufficient as a matter of law. [Citations.] An appellant who fails to cite and discuss the evidence supporting the judgment cannot demonstrate that such evidence is insufficient. The fact that there was substantial evidence in the record to support a contrary finding does not compel the conclusion that there was no substantial evidence to support the judgment." (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408.)

Parminder's brief failed to cite and discuss all the evidence supporting the trial court's finding. In fact, the record does not contain all the evidence that was before the trial court. The order on the sanctions motion includes an order granting Fisher's request for judicial notice, which it stated was "proper and unopposed." The request for judicial notice and the subject documents are not included in the appendix. Additionally, on its own motion, the trial court took judicial notice of identified documents in the conservatorship case and in another related case, but some of those documents are not included in the record. Because Parminder has not included all the evidence before the trial court in the record on appeal, she cannot show the evidence supporting the challenged order lacked substantiality.

Further, the documents that are included in the record (from the current action and the conservatorship action) demonstrate Parminder may have had a history of filing repetitive motions, petitions, and motions for reconsideration, to reargue matters already determined. The trial court may have considered those as evidence of Parminder's improper purpose in filing the putative spouse petition.

We conclude Parminder has failed to demonstrate that the trial court's finding of an improper purpose for filing the petition was not supported by substantial evidence. Consequently, the sanctions order is also supported by the finding of an improper purpose.

In closing, we note the extreme difficulty we encountered in trying to follow the record in this case, due to the incorrect manner in which the appendix was prepared. First, and most importantly, the documents contained in the appendix were not presented in chronological order, in violation of California Rules of Court, rules 8.124(d)(1) and 8.144(b)(2)(C).

Additionally, half of the documents contained in the appendix were from the related conservatorship case, which was filed in the trial court under a separate case number. "An appendix may contain only accurate copies of documents filed with the

19.

superior court *in the matter or matters under appeal*. [Citation.] By filing an appendix, counsel represent, under risk of sanctions, that the appendix 'consists of accurate copies of documents in the superior court file' *in the matter under review*." (*Aixtron, Inc. v. Veeco Instruments, Inc.* (2020) 52 Cal.App.5th 360, 381, italics added; see Cal. Rules of Court, rule 8.124(g).) Documents from the conservatorship case were not filed in the case under review. If they were presented to the trial court in the current case, Parminder did not present them to us in the manner in which they were presented to the trial court. For example, if the documents were submitted with the motion under review, as documents from another court case that were the subject of a request for judicial notice, the request for judicial notice, along with the accompanying documents, should have been presented to us as part of that motion. We note Parminder also did not present them to us as documents from a related case, and request that we take judicial notice of them in this appeal, pursuant to Evidence Code section 459.

The appendix also improperly includes a document described as a reporter's transcript, in violation of California Rules of Court, rule 8.124(b)(3)(B). Parminder's designation of the record on appeal indicated she elected to proceed without a reporter's transcript. We have disregarded the purported reporter's transcript.

Finally, the appendix contains what appear to be random evidentiary documents, not attached to or accompanied by a declaration or other document filed with the trial court. They were listed in the index under the date the document bore or the date of preparation, not the date they were filed with the trial court.

The rules for presentation of an appellant's appendix to the reviewing court were created to establish an orderly means of presenting the record to the court on appeal, as an alternative to a clerk's transcript. When an appellant elects to proceed by using an appendix, the trial court clerk "must promptly send a copy of the register of actions, if any, to the attorney of record for each party." (Cal. Rules of Court, rule 8.124(a)(2).) This requirement "is intended to assist appellate counsel in preparing an appendix by

providing them with the list of pleadings and other filings found in the register of actions or 'docket sheet' in those counties that maintain such registers." (Advisory Com. com., 23 pt. 3 West's Ann. Codes, Rules (2021 supp.) foll. rule 8.124, p. 74.) Parminder's attorney apparently did not use the register of actions as a guide in determining which documents were filed in this case and were appropriate for inclusion in the appendix.

## DISPOSITION

The June 19, 2018 order dismissing Parminder's petition and imposing monetary sanctions against her attorney is affirmed. Sawarn is entitled to costs on appeal.


                                                               HILL, P.J.
WE CONCUR:


DETJEN, J.


PEÑA, J.